[No. A070164. First Dist., Div. Two. Dec. 16, 1996.]

HERIBERTO URIARTE, Plaintiff and Respondent, v.
UNITED STATES PIPE AND FOUNDRY COMPANY, Defendant and
Appellant.

**COUNSEL**

Jay W. Luther for Defendant and Appellant.

William L. Gordon and B. E. Bergesen III for Plaintiff and Respondent.

**OPINION**

**HAERLE, J.—**

## I. INTRODUCTION

Respondent Heriberto Uriarte sued his employer, appellant United States Pipe and Foundry Company, and three other defendants for personal injuries suffered by him as a result of a 1992 plant accident involving a power press (or core-making machine) he was operating. Only one cause of action was stated against appellant. It was based on Labor Code section 4558 (section 4558), which provides an exception to the workers' compensation exclusive remedy rule in certain cases involving the noninstallation of power press

guards.[1] Appellant moved for and was granted summary judgment on the basis that a section 4558 right of action was unavailable here because, inter alia, a guard was not available for the model of machine in question. However, several months later, alleging newly discovered and highly relevant evidence, respondent moved for and was granted relief from this judgment under Code of Civil Procedure section 473 (section 473). Appellant appeals from that order. We affirm it.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On July 20, 1992, respondent's right hand was badly injured in an accident on a power press he was operating at appellant's Union City (Alameda County) plant. As a result of the accident, the hand had to be amputated. The power press in question was a "model 1220" originally manufactured by R & J Machinery Company, Inc. (R & J), and installed at appellant's Union City plant.

On July 15, 1993, respondent filed a complaint for damages, product liability, and violation of section 4558 against R & J, its two successors in interest, Shalco Systems Division of the Acme-Cleveland Corporation (Shalco) and Roberts Sinto Corporation (Roberts Sinto), and appellant. As to appellant, respondent asserted only a cause of action under section 4558. In it, he alleged that appellant had been informed by the manufacturer that the power press required the installation of a point of operation guard; that appellant was aware that failure to install such a guard would result in serious injuries to its employees; but that it failed to install such a guard in violation of section 4558.

Appellant answered the complaint and, inter alia, admitted that respondent was injured as alleged and that it had not installed a point of operation guard on the machine on which he was injured. Among other things, however, the answer alleged that the manufacturer of the machine never required that a point of operation guard be attached or provided it with such a guard.

---

[1]Section 4558 provides, insofar as pertinent here, that an employee may sue his employer for power-press related injuries if the injury is "caused by the employer's knowing . . . failure to install, a point of operation guard on a power press, and this . . . failure . . . is specifically authorized by the employer under conditions known by the employer to create a probability of serious injury . . . ." But it also provides that the employer will not be liable "absent proof that the manufacturer designed, installed, required, or otherwise provided by specification for the attachment of the guards and conveyed knowledge of the same to the employer." (§ 4558, subds. (b) and (c).)

On August 11, 1994, appellant filed a motion for summary judgment based on its contention that respondent could not establish that (1) the manufacturer of the machine required the attachment of a point of operation guard, or that it made this requirement known to appellant at any requisite time, or (2) his injury was proximately caused by appellant's knowing failure to install a guard on the machine, as required by section 4558.

The motion was set for hearing on November 14, 1994. In order to oppose the motion, counsel for respondent served appellant (as well as Shalco and Roberts Sinto) with a request for production of documents. It expressly requested any and all proposals to appellant from Shalco or Roberts Sinto, or "from any source whatsoever" from 1976 to the date of plaintiff's accident, for point of operation guards for the model 1220 machine on which plaintiff was injured. The request was served on August 15, 1994. On September 7, 1994, appellant filed a verified response to the request for production stating that "the items sought have never existed."

On September 22, 1994, respondent's counsel addressed a letter to appellant's counsel with respect to this response. The letter concluded: "Will you please have your client double check its files in Alabama, as I do not want material on this subject to surface in January through some other witness." On October 26, 1994, respondent, not having received further documents on this point, filed his opposition to the summary judgment motion. He argued, inter alia, that, to maintain a cause of action under section 4558, he need only show that the manufacturer required a point of operation guard modification; that such a requirement was in fact imposed by the manufacturer of the machine upon which plaintiff was injured (R & J); and that, despite its knowledge of the danger involved, appellant had made no modification of the machine.

In reply, appellant contended that it was entitled to judgment because—although it had concededly been warned of the danger posed by a model 1220 machine operating without a guard and of accidents which had occurred on such machines in two of its factories—"all that ever existed was a mere concept for a solid box unloading device that was never manufactured, for which no design drawings were ever produced, and no specifications were drawn." At the hearing on the motion, counsel for appellant insisted that section 4558 cannot be violated unless the manufacturer actually provides the point of operation device which it "requires" the employer to use, and that, since that never occurred here, it was entitled to summary judgment.

This position was adopted by the court, which held that section 4558 applies only after the manufacturer had identified "a danger and a fix for the

danger." In essence, it held that appellant would be liable only if it had refused to install a "manufacturer-required" guard and in this case "no such fix materialized." In its formal order, the court ruled that appellant was entitled to prevail "since said manufacturer never had any specific device, design, specification, or plans for a guard or other device to install or attach to make the machine safe . . . ." Judgment in favor of appellant was entered on December 28, 1994.

Respondent's case against the other defendants continued, however, and plaintiff eventually noticed the deposition of a Shalco employee who had dealt with appellant in the late 1980's. Just prior to that deposition, in January 1995, appellant's counsel advised respondent's counsel via a telephone call that, in 1989, Shalco had delivered to appellant's Burlington, New Jersey, plant a model 1220 press that had a point of operation protective device attached to it.

Thereafter, through that deposition and otherwise, respondent adduced evidence that in 1989 Shalco, R & J's successor in interest, sold appellant's New Jersey plant a later version of a model 1220 machine which it had manufactured. Apparently, this machine was the only model 1220 machine that Shalco ever sold to anyone. Although there were some minor differences, the basic design of the machine was essentially the same as the one in question at appellant's Union City plant. Such were the opinions of both the machine's original designer and two expert witnesses for respondent. Although appellant pointed out a few differences between the machines, it also effectively acknowledged—as indeed it acknowledges to this court—their essential similarity.

From this Shalco witness and otherwise, respondent also developed information that (a) in its initial quotation, Shalco made clear that, if appellant didn't order the protective guard, it would have to give Shalco a "hold harmless" agreement, (b) appellant in fact nevertheless ordered the 1989 model machine without the guard, but (c) Shalco installed such anyway because "we weren't going to let that machine out of our plant without guarding." Respondent also developed through discovery that, because the type of safety guarding provided by Shalco was unsuitable for appellant's New Jersey plant operations, appellant itself designed and installed a different type of protective device for the machine, i.e., a device in lieu of the Shalco-supplied device.

Based upon this and other pertinent information,[2] respondent moved for an order pursuant to section 473 to set aside the judgment, continue the trial date, and reopen discovery. He argued that appellant "was not only put on notice of the problem by R. & J. Machinery, but also by its successor manufacturer, Shalco Co., who again provided the warning that a fix was required and provided the fix as well."

In its opposition to the motion, appellant conceded that it had erred in denying that R & J's successor in interest, Shalco, had in fact sold it a model 1220 machine with an attached safety device. It characterized this as "an honest error" but argued that this new information still did not satisfy section 4558 and hence did not support the motion to vacate the judgment.

Initially, the trial court heard argument and then entered an interim order vacating the trial date, reopening discovery, continuing the hearing on the motion until a later date, and permitting the filing of additional argument and evidence. Further discovery was then had and additional submissions were filed by both parties. The motion was ultimately heard on April 24, 1995, and the following day the court entered its minute order granting the motion. The court ruled that, in essence, most of the unresolved issues—such as whether the two model 1220 machines were substantially similar, and whether Shalco had issued a "manufacturer-required modification"—were questions of fact for resolution by the trier of fact. Notice of entry of the order was filed on May 1, 1995, and it is from that order that appellant has perfected this appeal.

## III. Discussion

■ The parties, from their lengthy submissions on the appeal, evidently assume we should and will rule on the several interesting points they argue concerning the interpretation of section 4558. They are incorrect. We will dispose of it on a much narrower ground, standard of review, a topic incorrectly analyzed by appellant and substantially ignored by respondent.

Appellant, relying on our Supreme Court's 1967 decision in *Lynch* v. *Spilman* (1967) 67 Cal.2d 251 [62 Cal.Rptr. 12, 431 P.2d 636] (*Lynch*), contends that there are two successive standards, namely (1) an abuse of discretion standard as to whether there has been an adequate showing of the necessary inadvertence or excusable neglect and then, separately, (2)

---

[2]Because of the basis upon which we will affirm the trial court's order, we are only summarizing the major factual points developed by the parties in discovery and presented to the court via the section 473 motion and in opposition to it.

"whether the substantive position put forward by the [respondent] has merit." Appellant promptly concedes point (1) i.e., acknowledges that the trial court "could properly exercise its discretion" to vacate the judgment but goes on to argue the lack of substantive merit in respondent's case.

For his part, respondent barely mentions the issue of standard of review, does not cite or discuss *Lynch*, and argues entirely the merits of his substantive case under section 4558.

We have, on our own, carefully examined the issue of standard of review and conclude that (1) the second *Lynch* "requirement" has not been the law of this state for 15 years, (2) rather, the applicable rule is that an order of the trial court granting a section 473 motion is reviewed under, and only under, an abuse of discretion standard, and (3) there was no such abuse here. We shall deal with these points in the order just noted.

*Lynch* was an action by the Attorney General to impress a charitable trust upon certain real property distributed by a nonprofit corporation to its individual members. Initially, summary judgment was entered in favor of the plaintiff, but the defendants then made a motion under section 473 to vacate that judgment, a motion the trial court granted. The Supreme Court had in front of it an appeal from that order. Procedurally, in other words, the case was almost on all fours with the instant one. And in summarizing the issues before it, the court did indeed state as follows: "In determining whether or not the order appealed from can be upheld, we are required to consider two subsidiary questions: (1) Whether the summary judgment was taken against defendants because of the inadvertence or excusable neglect of their attorneys; and (2) whether defendants have a meritorious defense to plaintiff's motion. We have pointed out: 'Before the trial court can be called upon to exercise its discretion in relieving from a default judgment, however, the party in default must show not only a good excuse for his default, but also, that he has a meritorious defense to the action.' [Citation.]" (*Lynch, supra,* 67 Cal.2d at p. 256.)

The court followed exactly that two-step process in its ensuing analysis: after concluding that the trial court had not abused its discretion in finding inadvertence or excusable neglect (*Lynch, supra,* 67 Cal.2d at pp. 257-259), the court turned its attention to the question of "whether defendants have a meritorious defense to the motion for summary judgment." (*Id.* at p. 259.)

In adapting this two-step standard of review, the *Lynch* court cited *Beard v. Beard* (1940) 16 Cal.2d 645, 648 [107 P.2d 385] (*Beard*), a case involving the use of section 473 to set aside a default judgment. When one turns to that

case, one finds the *Lynch* two-step process explained a bit more fully: "Before the trial court can be called upon to exercise its discretion in relieving from a default judgment, however, the party in default must show not only a good excuse for his default, but also, that he has a meritorious defense to the action. [Citations.] The showing of meritorious defense is usually made either by additional affidavit or by a copy of the proposed verified pleading which is required by section 473 to accompany the application. If an affidavit of meritorious defense is presented, it must state the client's belief in the merits of his case, and it must show that he has fully and fairly stated the facts of the case to his attorney, in which situation the advice of counsel amounts to a *prima facie* showing of merit." (16 Cal.2d at p. 648.)

Thirty years after *Beard*, in *First Small Business Inv. Co.* v. *Sistim, Inc.* (1970) 12 Cal.App.3d 645 [90 Cal.Rptr. 798] (*Sistim*), a Court of Appeal explained the source of this rule in the following clearly critical language: "The genesis of section 473 of the Code of Civil Procedure was section 68 of the Practice Act. (Stats. 1851, ch. 5, p. 51.) Although the Practice Act made no mention of an affidavit of merits, *Bailey* v. *Taaffe* (1866) 29 Cal. 422 read into the Practice Act the requirement of an affidavit of merits. The common practice is for the moving party to state by way of affidavit that he has fully discussed all of the facts of the case with his attorney and has been advised that he has a good defense. [Citation.] . . . [¶] The reason for requiring a moving party to show more than that his default was excusable is that '[e]very consideration of expediency and justice is opposed to the opening up of cases in which judgment by default has been entered, unless it . . . appear[s] *prima facie* that the judgment, as it stands, is unjust.' [Citation.] The reason is stated somewhat differently in *Greenamyer* v. *Board of Lugo Elementary School Dist.* (1931) 116 Cal.App. 319 [2 P.2d 848] where it is said that 'a valid judgment should not be set aside unless it is made to appear, *prima facie,* that a different result would probably be reached.' Logically an unjust judgment is one which would *not* have been reached had there been a trial on the merits, not one which would *probably not* have been reached by a trial on the merits. [¶] Quite obviously the customary affidavit of merits . . . does not show, *prima facie* or otherwise, that the default judgment in favor of plaintiff either would not or probably would not have been entered had defendant made a timely response to the complaint. Proof of the fact exists in the countless cases when defendants have been successful in setting aside default judgments only to later lose on the merits. [¶] If the reasons ascribed for requiring an affidavit of merits are to be satisfied, this can be done by nothing short of a review of all of the evidence which is available to both plaintiff and defendant. But it was early held that a hearing on a motion to relieve a defendant from default is not the place or time to

ascertain whether defendant really has a defense. [¶] . . . [¶] Not only does an affidavit of merits . . . not serve the purpose for which it has been held to be intended, but many reasons come readily to mind why, for the orderly administration of justice, a party in default should be put in exactly the same position where he would have been had he not defaulted upon a timely showing only that he defaulted through mistake, inadvertence, surprise or excusable neglect. It is pointless to set forth these reasons here because the requirement of an affidavit of merits has been held to exist as recently as 1967. [Citation.]" *(Sistem, supra,* 12 Cal.App.3d at pp. 649-651.)

It was not until 11 years after these lamentations that the California Legislature did something about this state of affairs. In 1981 it amended section 473 to specifically provide that no affidavit or declaration of merits need be provided by a party moving for relief thereunder.[3] As a result of the 1981 amendment to section 473, Witkin now cites *Lynch* as authority for the "former requirement" of what had to be adduced in support of a section 473 motion. (8 Witkin, Cal. Procedure (3d ed. 1985) Attack on Judgment in Trial Court, § 175, p. 578.) There, the author goes on to explain the pre-1981 rule as follows: "It was formerly held that the moving party must show that he had a meritorious case or defense, so that a different result might possibly be reached if the judgment or order was vacated." Cited in support of this statement of the former rule are, among other cases, *Lynch, Beard* and *Sistim.* (*Id.* at pp. 578-579.) Witkin then goes on to cite the 1981 amendment as the basis for what the author concludes is the "abolition" of the former requirement. (*Id.* at p. 579.)[4]

We conclude from both the foregoing and pertinent post-1981 authority under section 473 that the "two-step" standard of review postulated by *Lynch, Beard* and *Sistim* no longer obtains. Among the more recent cases which articulate only an abuse of discretion standard of review for grants of section 473 motions is *Shamblin* v. *Brattain* (1988) 44 Cal.3d 474, 478-479 [243 Cal.Rptr. 902, 749 P.2d 339], where our Supreme Court held: "It is the policy of the law to favor, whenever possible, a hearing on the merits. Appellate courts are much more disposed to affirm an order when the result is to compel a trial on the merits than when the default judgment is allowed

---

[3]See Comment (1981) 13 Pacific L.J. 606 re this amendment. The comment notes that case law was the source of the requirement that the moving party had to either file a *verified* pleading *or* an "affidavit of merits," citing *Sistim* as authority for this explanation. (*Ibid.*)

[4]By contrast, the issue of whether the moving party has a meritorious defense is still pertinent when the motion is brought beyond the section 473 six-month period and based on, e.g., extrinsic fraud. (See *Rappleyea* v. *Campbell* (1994) 8 Cal.4th 975, 983 [35 Cal.Rptr.2d 669, 884 P.2d 126]; 8 Witkin, Cal. Procedure, *supra,* § 216, p. 620.)

to stand. [Citation.] Therefore, when a party in default moves promptly to seek relief, *very slight evidence is required to justify a trial court's order setting aside a default.* [Citation.] In the present case, [the defendant] promptly moved to have the default judgment set aside once he learned of it. The trial court's order granting relief was within its sound discretion and, *in the absence of a clear showing of abuse of discretion, should not be disturbed.* [Citations.] [¶] *The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason.* When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court. [Citations.]" (Italics added; see also, e.g., *Iott* v. *Franklin* (1988) 206 Cal.App.3d 521, 526-527 [253 Cal.Rptr. 635]; *Monsan Homes, Inc.* v. *Pogrebneak* (1989) 210 Cal.App.3d 826, 829 [258 Cal.Rptr. 676]; *Cochran* v. *Linn* (1984) 159 Cal.App.3d 245, 251 [205 Cal.Rptr. 550] [applying this standard to a motion to vacate a summary judgment]; *Mink* v. *Superior Court* (1992) 2 Cal.App.4th 1338, 1343-1344 [4 Cal.Rptr.2d 195] [same, and finding an abuse of discretion in a trial court's denial of a section 473 motion to vacate a summary judgment because of later-discovered facts].)

A consideration of the present case illustrates why the rule should be thus. If, in contrast, appellant had its way, we would be deciding whether, on the facts now presented, it is entitled to summary judgment on Uriarte's section 4558 claim. More importantly, we would be doing so as an original proposition and not as an appellate court reviewing the order of a trial court. Without ever saying so explicitly, appellant implies that this is a perfectly acceptable state of affairs. It suggests that, because our standard of review of a trial court's summary judgment order is de novo (see, e.g., *Union Bank* v. *Superior Court* (1995) 31 Cal.App.4th 573, 579 [37 Cal.Rptr.2d 653]), by asking us to deal with the merits of the case in light of respondent's new evidence before the trial court does, we are not being asked to do anything all that extraordinary.

■ Appellant is wrong. As we made clear in *American Continental Ins. Co.* v. *C & Z Timber Co.* (1987) 195 Cal.App.3d 1271, 1281 [241 Cal.Rptr. 466] (*American Continental*) ". . . in reviewing a summary judgment, the appellate court must consider only those facts before the trial court, disregarding any new allegations on appeal. [Citation.] *Thus, possible theories that were not fully developed or factually presented to the trial court cannot create a 'triable issue' on appeal.* [Citations.]" (Italics added.) Appellant is effectively arguing the converse of the premise rejected by us in *American Continental*: it is suggesting that, even before the trial court examines the new facts presented by respondent, we should do so and rule that, as a matter

of law, they *do not* present a triable issue of fact. But that proposition is no more tenable here than in the more normal situation presented in *American Continental*. The fact that we review de novo a grant of summary judgment does not mean that the trial court is a potted plant in that process. Whether summary judgment is appropriate in light of a significant new factual development in any case is an issue that should first be presented to the trial court and not to an appellate court. As one text states this rather basic proposition: "Fundamentally, unlike trial, the purpose of an appeal is *not* to determine the case on its merits, but to review for trial court error." (See Eisenberg et al., Cal. Practice Guide (The Rutter Group 1985) Civil Appeals and Writs, [¶] 1:12, p. 1-2 rev. #1, 1995.)

■ To reiterate, we hold that the applicable standard of review in this case is, and only is, whether the trial court abused its discretion in granting the respondent's motion to vacate the summary judgment previously entered against him. We have no hesitation in holding that there was no such abuse here. At the time of the trial court's original grant of appellant's summary judgment motion in December 1994, respondent was apparently unaware of the 1989 model 1220 machine furnished to appellant by R & J's successor in interest, Shalco, its design, its original safety device, the substitute safety device devised for it by appellant, etc. All of this was learned by respondent in the course of additional discovery *it* was pursuing against the remaining defendants after the trial court granted appellant summary judgment. And, at least arguably, it was not known to respondent earlier because of appellant's failure to fully and completely respond to discovery requests with respect to what had and had not been furnished to it by way of safety devices affixed to similar machines, under what circumstances they had been so affixed, etc. With this as background, it was hardly an abuse of discretion for the trial court to vacate its prior judgment pursuant to section 473.

### IV. DISPOSITION

The order appealed from is affirmed.

Kline, P. J., and Lambden, J., concurred.