Filed 10/11/13  Latty v. Croslin CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| DARLENE L. LATTY et al.,<br><br>        Plaintiffs and Respondents,<br><br>v.<br><br>WILLIAM J. CROSSLIN,<br><br>        Defendant and Appellant. | A134240<br><br>(Contra Costa County<br> Super. Ct. No. P07-01131) |

This is an appeal from a decision to grant the petition of respondents Darlene L. Latty and Rebecca Kinsfather (by and through her guardian ad litem, Lythan Gage) for reformation of The Rufus T. Crosslin and Mary L. Crosslin Irrevocable Family Trust (trust), and to deny the petition of appellant William J. Crosslin to enforce a settlement agreement related to the trust that he entered into with respondent Latty. Appellant is the son of Rufus and Mary Crosslin (hereinafter, parents or settlors/trustees), the sister of respondent Latty and the uncle of respondent Kinsfather. He challenges the trial court's grant of the reformation petition and refusal to enforce his and Latty's court -approved settlement agreement on the ground that the court's actions undermine his parents' clear intentions as settlors/trustees that he should be permitted to reside in the family home upon their deaths. For reasons set forth below, we affirm.

1

## FACTUAL AND PROCEDURAL BACKGROUND

Settlors/trustees created the family trust at the heart of this matter on August 14, 2002, and thereafter amended it on March 9, 2005.[1]  Pursuant to the trust, appellant, respondent Latty, respondent Kinsfather, Debra S. Marvin, and Marijane Elizabeth Kinsfather were named beneficiaries.[2]  In October of 2006, settlor/trustee Mary Crosslin, who survived her husband, Rufus, died.  According to the trust terms, appellant and respondent Latty then became successor co-trustees.[3]

The trust property included, among other things, two real properties:  (1) the family residence in El Sobrante (family residence), and (2) rental property in San Pablo (rental property).  Under the terms of the trust, the family residence in El Sobrante was to be retained in trust to serve as the primary residence for respondent Kinsfather.  Until shortly before her death, settlor/trustee Mary Crosslin was legal guardian to respondent Kinsfather, who suffers from severe autism, mental retardation and other serious disabilities requiring constant care.[4]  Toward the end of Mary Crosslin's life, respondent Latty was named co-guardian and, upon Crosslin's death, she became sole guardian. Undisputedly, Crosslin's wish was that respondent Kinsfather remain at home, out of a group home, for the remainder of her life despite her serious disabilities.

The trust further provided that, so long as respondent Kinsfather continued to live in this residence, the other surviving beneficiaries, including appellant, who is HIV-positive and suffers from AIDS, would be permitted to reside with her.  However, should

---

[1]     Only those terms and conditions of the trust relevant to this appeal are discussed herein.

[2]     Debra Marvin is the settlors/trustees' daughter and Marijane Elizabeth Kinsfather is their granddaughter.

[3]     Later, due in large part to ongoing conflicts between Latty and appellant, an independent successor trustee was named.

[4]     It is undisputed that respondent Kinsfather takes several prescribed psychotropic drugs for her condition and is prone to unprovoked and sudden aggressive and violent behavior, including biting, kicking or scratching.  According to Kinsfather's medical providers, her behavior requires constant monitoring by individuals trained to handle her situation, and requires complete consistency and stability in her home environment.

respondent Kinsfather cease to maintain the family residence as her primary residence for a period of one year or longer, the trust provided that the family residence would be sold and the proceeds divided equally among the beneficiaries.

In February of 2009, appellant and respondent Latty entered into a settlement agreement following court-ordered mediation for the purpose of enforcing certain terms of the trust. Relevant here, the settlement agreement, which was subject to court approval, provided that appellant could live in the family residence on 30 days notice and that both parties would resign as co-trustees of the trust to permit appointment of a neutral third party.[5] On appellant's petition, the trial court thereafter approved the settlement agreement.

On May 14, 2010, respondents filed the aforementioned petition for reformation and modification of the trust pursuant to Probate Code section 15409, and for protective order.[6] Appellant, in turn, filed a petition to enforce the February 2009 settlement agreement. Following a three-day trial, the trial court granted respondents' petition and denied appellant's petition. In doing so, the trial court ordered reformation of the trust to delete the provision permitting appellant to live in the family residence so long as respondent Kinsfather was living there, and to increase by $25,000 the amount set aside in reserve to maintain the family residence. On November 4, 2011, a decision after trial

---

[5] Court-ordered mediation followed the filing of numerous petitions in this matter by both appellant and Latty. Specifically, Latty had filed petitions to remove appellant as a co-trustee, to enforce the trust terms, and to reform and modify the trust due to mistake. Appellant, in turn, filed petitions to remove Latty as a co-trustee, for an accounting from Latty, for enforcement of the trust terms, and for reformation. These earlier petitions are not relevant herein.

[6] Probate Code section 15409 provides in relevant part: "On petition by a trustee or beneficiary, the court may modify the administrative or dispositive provisions of the trust or terminate the trust if, owing to circumstances not known to the settlor and not anticipated by the settlor, the continuation of the trust under its terms would defeat or substantially impair the accomplishment of the purposes of the trust. In this case, if necessary to carry out the purposes of the trust, the court may order the trustee to do acts that are not authorized or are forbidden by the trust instrument." (Prob. Code, § 15409, subd. (a).)

was thus entered in favor of respondents. Appellant filed a timely appeal on December 30, 2011.

## DISCUSSION

Appellant raises two primary issues on appeal.[7] First, appellant contends the trial court erred by granting respondents' petition to reform the trust in the absence of any showing of fraud, mistake or change of circumstances and in a manner contrary to his parents' intentions. Second, he contends the trial court erred by refusing to enforce his and respondent Latty's court-approved settlement agreement on "technical procedural grounds," and then entering the aforementioned reformation order despite its inconsistency with the settlement agreement.[8] Finally, as a subsidiary issue, appellant contends that "[his] HIV status requires enforcement of the agreement pursuant to California Government Code § 12900, et seq."[9]

Respondents counter that, in raising these issues, appellant has failed to provide us with an accurate and complete description of the trial court's decision, including a description of the factual or legal grounds upon which the trial court based its decision. In addition, appellant has failed to identify with citation to the appellate record any evidence to support his claim that the trial court lacked a valid basis for reforming the trust and for refusing to enforce his and respondent Latty's settlement agreement. Respondents' observations regarding appellant's omissions are accurate.

Specifically, appellant's opening brief states that the trial court, by its order, has "rewritt[en] the Trust to remove [the settlors'] intent" even though "[t]he only thing that

---

[7]     Appellant does not challenge the trial court's order to reform the trust to increase the maintenance reserve fund for the family residence by $25,000.

[8]     Appellant does not identify the "technical procedural grounds" purportedly relied upon by the trial court.

[9]     Under Government Code section 12955, subdivision (a), it is unlawful for "the owner of any housing accommodation to discriminate against or harass any person because of the race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, marital status, national origin, ancestry, familial status, source of income, disability, or genetic information of that person."

has changed is the fact that Miss Latty does not want to live with someone who is HIV positive" due to "[her] unrealistic fears about how HIV is transmitted . . . ." However, appellant directs us to nothing in the record — whether with respect to the trial court's reasoning or the underlying material facts — to demonstrate how the trial court erred. For example, appellant claims the "trial court relied on testimony that predated the trust instrument by many, many years to find [him] unsuitable to live in the family home." Appellant then "denies those events ever occurring" without actually identifying or explaining "those events." Indeed, wholly absent from appellant's brief is citation to any evidence in the record supporting his claims that there are no changed circumstances warranting reformation of the trust and that the trial court's reliance on unidentified past "events" as a basis for reformation was wrong.

Thus, as these examples reflect, there are several ways in which appellant's opening brief fails to comply with minimum standards of appellate practice. Most significantly, as stated above, appellant's opening brief fails to provide an adequate description of what the trial court relied upon, factually or legally, in reaching its decision after trial, a violation of the mandatory requirements of California Rules of Court, rule 8.204, subdivision (a)(2).[10] Moreover, due to this failure, we are left without any clear

---

[10] Former California Rules of Court, rule 14 was amended and renumbered as Rule 8.204 effective January 1, 2007. Subdivision (a) of rule 8.204 provides:

"(a) Contents

" (1) Each brief must:

"  (A) Begin with a table of contents and a table of authorities separately listing cases, constitutions, statutes, court rules, and other authorities cited;

"  (B) State each point under a separate heading or subheading summarizing the point, and support each point by argument and, if possible, by citation of authority; and

"  (C) Support any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears. If any part of the record is submitted in an electronic format, citations to that part must identify, with the same specificity required for the printed record, the place in the record where the matter appears.

" (2) An appellant's opening brief must:

"  (A) State the nature of the action, the relief sought in the trial court, and the judgment or order appealed from;

"  (B) State that the judgment appealed from is final, or explain why the order appealed

5

understanding of the events leading up to this appeal. It is not our role as appellate court to independently review the record to piece together what has happened. (Cal. Rules of court, rule 8.204, subd. (a)(2)(C) [appellant must file an opening brief that "[p]rovide[s] a summary of the significant facts limited to matters in the record."]; see also *Uriarte v. United States Pipe & Foundry Co*. (1996) 51 Cal.App.4th 780, 791 ["unlike trial, the purpose of an appeal is *not* to determine the case on its merits, but to review for trial court error"].)[11]

Based upon these deficiencies in appellant's opening brief, respondents asked this Court in their responsive brief to simply deny his appeal for failure to demonstrate trial court error. Rather than attempt to correct the deficiencies identified by respondents or to respond to their argument, however, appellant opted not to file anything by way of a reply. This is despite the fact that, as respondents note, a trial court's decision on a petition for reformation is reviewed for abuse of discretion, and it is the burden of the challenging party – here, appellant – to affirmatively demonstrate such abuse. (Prob. Code, § 15409, subd. (a) [trial court may modify a trust "if, owing to circumstances not known to the settlor and not anticipated by the settlor, the continuation of the trust under

_____

from is appealable; and

"  (C) Provide a summary of the significant facts limited to matters in the record."

[11]     To the extent appellant's brief can be said to include any summary of significant facts, that summary is one-sided and, as explained above, without record citation. Our own review of the decision after trial reveals the trial court found appellant's version of the relevant facts simply not credible. Indeed, the trial court found that appellant would pose a danger to respondent Kinsfather if he remained in the family residence given his history, including recent history, of violent behavior toward family members. This history includes breaking a window at the family residence when Latty denied him access, and punching his nephew, Joshua Latty, in the face with a closed fist, requiring medical treatment. The trial court also found not credible appellant's stated purpose that he wanted to move into the family residence to keep the family "somewhat intact" and share the burden of Kinsfather's care, concluding to the contrary that: "[his] sole purpose for insisting on moving into the family home is to drive out Darlene Latty and, along with her Rebecca, so that the house would be sold and he receiver [sic] his share of the sale proceeds . . . [which] would be directly contrary to the wishes of the Settlors." As stated above, appellant directs us to no evidence in the record that contradicts the trial court's findings.

6

its terms would defeat or substantially impair the accomplishment of the purposes of the trust. . . ."]; *Estate of Billings* (1991) 228 Cal.App.3d 426, 430 ["the discretion is that of the trial court, and we will only interfere with its ruling if we find that under all the evidence, viewed most favorably in support of the trial court's action, no judge reasonably could have reached the challenged result"].) As such, where, as here, the challenging party fails to make this affirmative showing, there is no basis for reversing the trial court. (*Estate of Billings, supra,* 228 Cal.App.3d at p. 430; see also *Blank v. Kirwan* (1985) 39 Cal.3d 311, 331; *Mission Imports, Inc. v. Superior Court* (1982) 31 Cal.3d 921, 932.)

In summary, we agree with respondents' analysis. Given appellant's substantial noncompliance with the mandatory rules set forth above, we conclude his challenge to the trial court's decision after trial necessarily must fail. (E.g. *Berger v. California Ins. Guarantee Assn.* (2005) 128 Cal.App.4th 989, 1007; *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246 [appellate arguments are waived where appellant's briefs are "devoid of citations to the reporter's transcript and . . . in dramatic noncompliance with appellate procedures"]. See also Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2012) ¶ 9:21, p. 9-6 ["appellate court can treat as *waived . . .* any issue that, although raised in the briefs, is *not supported by pertinent or cognizable legal argument or proper citation of authority*"].) The trial court's decision therefore stands.

## DISPOSITION

The November 4, 2011 decision after trial is affirmed.

_____\
Jenkins, J.

We concur:

_____
McGuiness, P. J.

_____
Pollak, J.