Filed 8/26/21  Liebovich v. Tobin CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| MATTHEW LIEBOVICH et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> DIANE TOBIN et al., as Trustees, etc., <br><br> Defendants and Respondents. | B306184 <br><br> (Los Angeles County Super. Ct. Nos. BP138119, 17STPB10559) |

APPEAL from an order of the Superior Court of Los Angeles County.  Barbara R. Johnson, Judge.  Affirmed.

Keiter Appellate Law and Mitchell Keiter for Plaintiffs and Appellants.

Sacks, Glazier, Franklin & Lodise, Robert N. Sacks, Matthew W. McMurtrey, and John A. Scheerer for Defendants and Respondents.

\* \* \* \* \* \*

This is the second appeal in this probate matter. In the first appeal, we concluded that the probate court had erred in categorically denying a motion to vacate a void, prior court order, but remanded the matter so the probate court could exercise its discretion in deciding whether to vacate the void order under Code of Civil Procedure section 473, subdivision (d).[1] The probate court exercised its discretion *not* to vacate the order. In this second appeal, the parties seeking to vacate the order argue that (1) the probate court really did not have any discretion to deny their motion to vacate, and (2) even if it did, the court abused its discretion. The first argument is barred by the law of the case doctrine, and the second is without merit. Accordingly, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I.    Facts[2]

#### A.    *The family*

Theodore and Shirley Liebovich had four children—Diane Janice Tobin, Lori Gayle Robin, Stuart Jerome Liebovich, and

---

[1]    All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2]    Most of these facts are drawn from our unpublished opinion in the first appeal. (*Liebovich v. Tobin* (Sept. 5, 2019, B292177) (*Liebovich I*).)

Bruce Allen Liebovich.[3]

**B.   *The distribution of Theodore and Shirley's estate***

This long-running matter deals with distribution of Theodore and Shirley's estate, after Theodore died in 2014 and Shirley died in 2017.

1.   *The original trust*

In 1984, Theodore and Shirley executed the Liebovich 1984 Trust (the Trust).

2.   *The sixth amendment and Shirley's power of attorney*

In July 2006, and after jointly executing five amendments to the Trust, (1) Theodore and Shirley executed the Sixth Amendment to and Complete Restatement of Trust (the sixth amendment), and (2) Shirley executed a "Durable Power of Attorney (Limited)" (power of attorney).  The sixth amendment provided that the spouses can "alter, modify, or amend the trust" during their lifetimes only if they act "jointly," but did not define "jointly" to authorize one spouse to sign for *both* using a power of attorney.  In the power of attorney, Shirley expressly granted Theodore several specific powers, but did not expressly grant him the power to amend the beneficiaries of the Trust or the power to waive notice for her.  In terms of the Trust's beneficiaries, the sixth amendment specified that, after Theodore and Shirley died and various charities received bequests, the remainder would be split "[e]qually" among the four children (or, if a child died first, the grandchildren of that deceased child).

---

[3]   Because many of the persons involved in this case share the same last name, we will use first names for clarity.  We mean no disrespect.

### 3.    *The seventh through tenth amendments*

Between 2007 and 2011, the Trust was amended four more times (via the seventh, eighth, ninth and tenth amendments). Each time, Theodore signed for himself *and* purported to sign for Shirley using the power of attorney.  Collectively, these four amendments (1) reduced Stuart's share to a $500 monthly stipend, and more "if needed for [his] proper support, health, maintenance and education," (2) acknowledged Bruce's death and left Bruce's four children nothing, and (3) thus left Diane and Lori to "equally" split the remainder of the Trust's corpus after the charity bequests and Stuart's stipend.

### 4.    *Theodore's petition to retroactively modify the sixth amendment and power of attorney, and the court's order granting petition*

In December 2012, Theodore filed a petition to (1) amend the sixth amendment to clarify that the Trust may be modified by one spouse's use of a power of attorney for the other spouse, (2) amend the power of attorney to expressly grant Theodore the power to amend the Trust on Shirley's behalf, and (3) declare the two requested amendments retroactively effectively, thereby reaffirming the validity of the previously executed seventh through tenth amendments (the 2012 petition).  In support of the petition, Theodore submitted a declaration from the lawyer who prepared the sixth amendment and power of attorney.  In the declaration, the attorney stated that Shirley's "unequivocal desire" when executing the sixth amendment and power of attorney was to "empower[]" Theodore "to amend the Trust as her attorney-in-fact" using the power of attorney, and that the omission of language from those documents expressly authorizing such use of the power of attorney was a "scrivener's error."

4

Theodore did not serve Bruce's children with a copy of the 2012 petition, and filed a "waiver of notice" on Shirley's behalf using the power of attorney.

The probate court granted the petition in April 2013 (the 2013 Order).

### 5. *The eleventh through fourteenth amendments*

Between 2012 and 2013, Theodore invoked the power of attorney to execute four more amendments to the Trust (designated as the eleventh through fourteenth amendments). The fourteenth amendment provided that each of Bruce's children would receive $25,000 if they did not contest the Trust.

### 6. *Theodore's death and exchange of documents*

After Theodore passed away in January 2014, counsel for the trustees of the Trust (Diane, Lori, and a third individual) sent notification of Theodore's death to Bruce's adult children and to Bruce's youngest child (named Joshua) at his legal guardian's house. The notice advised Bruce's children that they are heirs or beneficiaries to the Trust and invited them to ask "any questions regarding the Trust or its distribution." In response to an inquiry from an attorney representing Bruce's adult children, the attorney sent those children in March 2014 copies of the thirteenth and fourteenth amendments, which expressly refer to the 2013 Order as well as the docket number from that case. None of Bruce's children took any action regarding the 2013 Order at that time.

### 7. *Shirley's death*

After Shirley passed away in April 2017, the trustees sent each of Bruce's children notice of her death, a proposed release agreeing not to contest the Trust, and an additional $5,000 check to hire "skilled legal counsel to advise him or her" whether to sign

5

the release.  The children cashed the checks, but signed no releases.

## II.    Procedural Background

### A.    *Through the first appeal*

In March 2018, Bruce's four children (plaintiffs) filed a motion to vacate the 2013 Order as void on the grounds that (1) *they* were not given proper notice, and (2) *Shirley* was not given proper notice.

The probate court denied the motion, finding that (1) plaintiffs were not entitled to notice because the Trust was still revocable at the time of Theodore's petition and (2) any deficiency in notice to *Shirley* was irrelevant because "Shirley isn't the party" bringing the motion to vacate.

Plaintiffs appealed.  In a September 2019 opinion, we agreed with the probate court that plaintiffs were not entitled to notice, but concluded that the 2013 Order was void on its face due to lack of notice to Shirley and that plaintiffs had standing to challenge the 2013 Order because it affected their rights or interests.  Because plaintiffs were seeking relief under section 473, subdivision (d), which provides for discretionary relief, we remanded the matter back to the probate court to exercise that discretion and directed the court to "consider, among other relevant factors, (1) whether Shirley's participation in the proceedings regarding the petition to reform the sixth amendment and power of attorney would have led to a different result," and (2) "whether plaintiffs [had been] diligent in bringing their motion to [vacate]."

Plaintiffs did not petition for rehearing with this court or petition for review with the California Supreme Court.

6

**B.** *Through this appeal*

Immediately after the case was remanded to the probate court, the court issued an order asking for briefing on whether to exercise its discretion. After receiving briefing from the parties and holding a hearing, the probate court issued a four-page order declining to exercise its discretion to vacate the void 2013 Order. At the outset, the court rejected plaintiffs' argument that it was *required* to vacate the 2013 Order, reasoning that this court would not have remanded the matter for the probate court to exercise its discretion if it could exercise it in only one way. The probate court then turned to the factors identified by this court, and concluded that "Shirley's participation in [Theodore's 2012] petition [to effectively ratify the sixth amendment and power of attorney and to retroactively validate the seventh through tenth amendments] would not have led to a different result" because (1) Shirley's lawyer had declared that Shirley met with him separately and disclosed her intent that Theodore have the power to amend the Trust's beneficiaries using the power of attorney, (2) Shirley's intention to allow Theodore to act as her proxy was corroborated by their marriage of "at least 20 years by the time" the sixth amendment and power of attorney "were executed," (3) *all* of Shirley's grandchildren were biological grandchildren, and (4) Shirley had "disinherited" Stuart's children as well as plaintiffs. The court also concluded that plaintiffs had "unreasonably delay[ed] . . . challenging the" 2013 Order because they had "receive[d] notice" of the 2013 Order in early 2014 but nevertheless waited until 2018—and, critically, waited until after Shirley's death—to challenge the 2013 Order, thereby "depriv[ing]" the trustees "of the readiest means of proving Shirley's intent" and thereby prejudicing them. As a result, the

court "exercise[d] its discretion to not overturn the 2013 . . . Order."

Plaintiffs filed this timely appeal.

## DISCUSSION

Plaintiffs argue that the probate court erred in not vacating the 2013 Order because (1) the court was *obligated* to vacate the order, and (2) even if the court had some discretion not to vacate the order, it abused that discretion in this case. We examine each issue separately.

## I. *Was the probate court obligated to vacate the 2013 Order under section 473, subdivision (d)?*

Plaintiffs argue that (1) notwithstanding the statutory language in subdivision (d) of section 473 that a court "*may* . . . set aside any void judgment or order" (§ 473, subd. (d), italics added), a court *must* vacate a void order; (2) even if a trial court has some discretion to decline to vacate a void order, the discretion a court possesses in deciding whether to grant relief from a prior order exists along a spectrum from "broad" to "almost none," and its discretion when the order is void is "almost none"; and (3) even if a trial court possesses more than a little discretion to decline to vacate a void order, the first factor this Court identified in its first appellate decision (whether Shirley's involvement would have led to a different result in the proceedings resulting in the 2013 Order) is not a proper consideration when exercising such discretion. All of these arguments are variations on the same theme—namely, that this court erred in concluding that the probate court had discretion to decline to vacate a judgment and in specifying factors relevant to exercising that discretion.

8

Because plaintiffs are challenging our rulings in the prior appeal, whether we may entertain plaintiffs' challenges *in this appeal* turns on how the law of the case doctrine applies. This is a question of law we review de novo. (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 384.)

### A.    *Law of the case doctrine*

Under the law of the case doctrine, a prior appellate decision is deemed conclusive in all subsequent trial and appellate proceedings between the same parties in the same case as to any "rule of law necessary to th[at] decision." (*Morohoshi v. Pacific Home* (2004) 34 Cal.4th 482, 491 (*Morohoshi*); *Leider v. Lewis* (2017) 2 Cal.5th 1121, 1127 (*Leider*).)  Here, we necessarily decided in our prior appellate decision in this matter that the probate court had discretion pursuant to section 473, subdivision (d) to decide whether or not to vacate the void 2013 Order and necessarily decided two of the factors relevant to the exercise of that discretion.  Because we are now in subsequent appellate proceedings involving the same parties in the same case, our prior rulings on whether the court has discretion and the factors relevant to its exercise have been conclusively established and cannot now be relitigated.

### B.    *Limitations on law of the case doctrine*

The law of the case doctrine has two inherent limitations of which plaintiffs seek to avail themselves.  First, the law of case doctrine "does not apply to arguments" not expressly or implicitly presented and decided in the prior appeal. (*Leider*, *supra*, 2 Cal.5th at p. 1130.)  Second, the law of the case doctrine may be ignored "where its application would result in an unjust decision," which exists when (a) the prior appellate decision rested on a "manifest misapplication of existing [law] resulting in

9

substantial injustice," or (b) "the controlling rules of law have been altered or clarified" at some point after the prior appellate decision. (*Morohoshi*, *supra*, 34 Cal.4th at pp. 491-492; *People v. Stanley* (1995) 10 Cal.4th 764, 787.)

Neither limitation applies here.

Because our prior appellate decision expressly decided that trial courts have discretion to deny relief under subdivision (d) of section 473 and expressly set forth two factors relevant to the exercise of that discretion, the first limitation is inapplicable and thus the sole remaining question is whether adhering to our prior appellate decision would result in an "unjust decision." It would not.

1. *Manifest misapplication of existing law?*

Our prior decision did not rest on a "manifest misapplication of" existing law. As we noted in our prior opinion, the plain text of section 473, subdivision (d) provides that "[t]he court *may* . . . set aside any void judgment or order" (§ 473, subd. (d), italics added)—not that it *must*. In statutes like section 473 that in some parts use "shall" to connote mandatory obligations (*id.*, subd. (b)), their simultaneous use of "may" in other parts usually connotes a discretionary decision. (*Tarrant Bell Property, LLC v. Superior Court* (2011) 51 Cal.4th 538, 542.) Not surprisingly, several courts have read this language in subdivision (d) of section 473 as "mak[ing] it clear that a trial court retains discretion to grant or deny a motion to set aside a void judgment." (*Talley v. Valuation Counselors Group, Inc.* (2010) 191 Cal.App.4th 132, 146; *Cruz v. Fagor America, Inc.* (2007) 146 Cal.App.4th 488, 495; *Nixon Peabody LLP v. Superior Court* (2014) 230 Cal.App.4th 818, 822 (*Nixon*).)

Plaintiffs offer what boil down to three reasons why our reading of section 473, subdivision (d) constituted a "manifest misapplication of existing law."[4]

First, plaintiffs argue that section 473, subdivision (d)'s language purporting to grant courts discretion does not mean what it says, and that trial courts *must* set aside void judgments and orders in all cases. For support, they note that (1) no published case has upheld a trial court's decision not to vacate a void judgment or order, (2) a judicial benchbook for California judges says that courts should usually vacate void judgments and orders, (3) their position is supported by *Varian Medical Systems, Inc v. Delfino* (2005) 35 Cal.4th 180 (*Varian*); *Calvert v. Al Binali* (2018) 29 Cal.App.5th 954 (*Calvert*); and *OC Interior Services, LLC v. Nationstar Mortgage, LLC* (2017) 7 Cal.App.5th 1318 (*OC Interior*). Plaintiffs are wrong. The absence of a published case applying the plain text of a statute does not mean the text means

---

[4] Plaintiffs make two other arguments, but neither warrants much discussion. They argue that the trustees claim Shirley suffered from dementia in 2013; she therefore could not have modified the trust in 2012; and plaintiffs themselves (rather than Shirley) were therefore entitled to notice of the 2012 proceedings. However, we already held the 2013 Order was void and that plaintiffs had standing to so argue. The reason *why* the 2013 Order was void does not affect the court's discretion under section 473, subdivision (d). Plaintiffs further argue that all of the evidence the probate court considered in the 2012 proceeding was inadmissible hearsay and thus could not support the 2013 Order. Aside from being waived for being raised for the first time in the reply brief of the second appeal, this argument would at best render the 2013 Order *voidable,* which would mean the trial court was *compelled to deny* any relief as untimely. (§ 473, subd. (b).)

11

something different.  A benchbook has zero precedential value.
And none of the cases plaintiffs cite has anything to do with the
discretion available to a court under section 473, subdivision (d).
(*Varian*, at p. 200 [noting that a reviewing court's "'jurisdiction is
limited'" to reversing a void judgment, but not discussing section
473, subdivision (d)]; *Calvert*, at p. 961 [noting that void
judgments are a ""'"nullity,"'"" but not discussing section 473,
subdivision (d)]; *OC Interior*, at pp. 1330-1331 [same].)  Because
these cases do not deal with section 473, subdivision (d), the
soundbites plaintiffs lift from them cannot be inconsistent with
our prior opinion interpreting that statutory provision.  (E.g.,
*California Building Industry Assn. v. State Water Resources
Control Bd.* (2018) 4 Cal.5th 1032, 1043 ["cases are not authority
for propositions that are not considered"].)

Second, plaintiffs argue that the probate court
"misperceived its discretion" by thinking that it had *any*.
Plaintiffs make a three-step argument:  (1) *Osseous Technologies
of America, Inc. v. DiscoveryOrtho Partners LLC* (2010) 191
Cal.App.4th 357, 364-365 (*Osseous*) holds that statutes that
purport to confer discretion upon a court may actually require
that the court's discretion, in certain situations, be exercised in a
particular way; (2) the degree of discretion a trial court has to
vacate a judgment or order *varies*, depending on (a) whether what
is to be vacated is an order or a judgment (e.g., *Rappleyea v.
Campbell* (1994) 8 Cal.4th 975, 981-982 (*Rappleyea*)), (b) whether
the judgment or order is void or voidable (compare § 473, subd.
(d) with *id.*, subd. (b)), and (c) whether the equitable relief sought
is based on section 473 or the court's inherent authority (e.g.,
*Carroll v. Abbott Laboratories, Inc.* (1982) 32 Cal.3d 892, 901, fn.

12

8);[5] and (3) the discretion a trial court has to decline to vacate a void order or judgment is—along this spectrum of discretion trial courts possess to vacate judgments and orders—almost nil. Plaintiffs further argue that the probate court was wrong to read our prior appellate decision as requiring it to exercise its discretion because, in their view, our remand was merely a gesture of "procedural comity" intended to let the *probate court* be the court that granted relief rather than us.

Plaintiffs are wrong again. Even if we ignore that *Osseous* is inapt because it is a case interpreting discretion under the declaratory relief statute, the second and third steps of plaintiffs' argument—namely, that (1) there are several different levels of discretion that trial courts possess in deciding whether to vacate a judgment or order that fit inside one another like Russian nesting dolls, and (2) the discretion to decline to vacate a void order under section 473, subdivision (d) is the tiniest doll in the center—are incorrect. The cases plaintiffs cite discussing the discretion available to a trial court in a *specific context* do not purport to compare and contrast that discretion with the breadth of discretion available in other contexts. More to the point, *none* of them discuss the breadth of discretion available under section

---

[5]  Plaintiffs also note that the degree of "scrutiny" that an appellate court applies to a trial court's exercise of discretion varies, depending on whether the trial court granted or denied relief (*Rappleyea*, at p. 980, quoting *Elston v. City of Turlock* (1985) 38 Cal.2d 227, 233, superseded by statute on other grounds as stated in *Tackett v. City of Huntington Beach* (1994) 22 Cal.App.4th 60, 64), but this maxim addressing the scope of appellate review seems irrelevant to plaintiffs' argument about the amount of discretion possessed by a *trial court* in the first instance.

473, subdivision (d).[6]  Thus, the probate court properly read our prior decision as asking it to exercise its discretion, as we are not in the business of ordering the trial courts to engage in time-wasting idle acts.

Third, plaintiffs argue that existing law does not authorize a trial court, when exercising its discretion to vacate a void order or judgment under section 473, subdivision (d), to consider whether vacating the order and starting over would lead to a different result.  For support, plaintiffs cite *Peralta v. Heights Medical Center, Inc.* (1988) 485 U.S. 80, 86-87 [when person is "deprived of property in a manner contrary to the most basic tenets of due process," fact that result might be the same after a hearing irrelevant]); *Cadenasso v. Bank of Italy* (1932) 214 Cal. 562, 565-569, superseded by § 170.1 [when litigant's case is dismissed by disqualified judge, fact that case will likely be dismissed before qualified judge does not obviate entitlement to relief]; *Sindler v. Brenna* (2003) 105 Cal.App.4th 1350, 1353-1354 (*Sindler*) [when trial court dismisses case while it lacks jurisdiction due to pending federal bankruptcy, "prejudice is not a factor"]; *Calvert*, *supra*, 29 Cal.App.5th at p. 964 [no showing of different result necessary when judgment is void]; and *Fidelity Creditor Service, Inc. v. Browne* (2001) 89 Cal.App.4th 195, 204-206 [litigant entitled to vacate order renewing judgment under

---

6    Plaintiffs' citation to *People v. North River Insurance Co.* (2020) 48 Cal.App.5th 226 (*North River*), is even more far afield.  There, we held that a trial court would abuse its discretion in vacating summary judgment when vacating the judgment would lead to an absurd result, and hence would constitute an abuse of discretion.  (*Id.* at pp. 238-239.)  Cited for this proposition, *North River* is a tautology that is of no use in defining the breadth of discretion available under section 473, subdivision (d).

14

Enforcement of Judgments Law "without establishing a meritorious defense" to renewal]. However, none of these cases purports to address whether the existence of a meritorious defense may be considered when a trial court is exercising its discretion *under section 473, subdivision (d)*; indeed, the only case to cite that statutory provision is *Sindler*, and *Sindler* did not address—let alone rule on—the discretionary language in that provision. In our prior opinion, we suggested the likely usefulness of starting over as a relevant factor because it is *generally* relevant to discretionary, equitable calls a trial court must make; even if the relevance of this factor is open to debate, no case cited by plaintiffs—and no case we have found on our own—purports to hold that our decision allowing for the consideration of that factor under section 473, subdivision (d) is contrary to—and hence a "manifest misapplication" of—existing law.

   2. *Alteration or clarification of the controlling rules of law?*

  The controlling rules of law we applied in our prior appellate decision have not changed. Plaintiffs contend otherwise, citing *Sass v. Cohen* (2020) 10 Cal.5th 861 (*Sass*), *Barefoot v. Jennings* (2020) 8 Cal.5th 822 (*Barefoot*), and *Roth v. Jelley* (2020) 45 Cal.App.5th 655 (*Roth*). But none of those cases altered or clarified the law we applied. *Sass* reaffirmed preexisting case law holding that the discretion a trial court possesses to decline to vacate a void judgment under section 473, subdivision (d) is overridden when the void judgment is a default judgment that is void under section 580 for being in an amount in excess of the amount properly pled by the plaintiff. (*Sass*, at pp. 873-874; *Airs Aromatics, LLC v. CBL Data Recovery*

*Technologies, Inc.* (2018) 23 Cal.App.5th 1013, 1023 ["It would be anomalous for a court to lack fundamental jurisdiction to enter a particular default judgment under section 580 but nevertheless retain *discretion* under section 473, subdivision (d) to not set that judgment aside."].)  The rule adopted in *Sass* and its predecessor cases has no application where, as here, the order is not a void default judgment in excess of the amount pled, and thus where section 580's competing policy of mandatory invalidity overrides the discretion otherwise conferred by section 473, subdivision (d). *Barefoot* and *Roth* do not undermine our application of section 473, subdivision (d) because they do not cite that provision at all.

## II.  *Did the Probate Court Abuse Its Discretion in Declining to Vacate the Void 2013 Order?*

Plaintiffs alternatively argue that the probate court abused its discretion in denying their motion to vacate the void 2013 Order.  Contrary to what plaintiffs urge, we review a trial court's denial of a motion to set aside a void order for an abuse of discretion.  (*Nixon, supra,* 230 Cal.App.4th at p. 822; cf. *Calvert, supra,* 29 Cal.App.5th at p. 961 [reviewing precursor question of whether a judgment is void de novo]; *Pattera v. Hansen* (2021) 64 Cal.App.5th 507, 526 [same]; *Roth, supra,* 45 Cal.App.5th at p. 666 [reviewing precursor question of whether a judgment is void for violating due process de novo].)  Under the abuse of discretion standard, we start by reviewing any subsidiary legal questions de novo and any subsidiary factual questions for substantial evidence.  (*Shoen v. Zacarias* (2019) 33 Cal.App.5th 1112, 1118-1119.)  And if we conclude that the trial court applied the correct law to factual findings supported by substantial evidence, we then ask whether the court's ruling is "irrational" and "arbitrary," or instead is within the "bounds of reason."  (*People v.*

*Carmony* (2004) 33 Cal.4th 367, 376-377 (*Carmony*); *Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478; *Uriarte v. United States Pipe & Foundry Co.* (1996) 51 Cal.App.4th 780, 790 (*Uriarte*).) In so doing, we may not substitute our decision for the trial court's (*In re Marriage of Varner* (1997) 55 Cal.App.4th 128, 138, superseded on other grounds by § 473; *Uriarte*, at p. 790), and must defer to the trial court's choice of one reasonable inference over another (*Uriarte*, at p. 790). The appealing parties—here, plaintiffs—have the burden of showing that the trial court abused its discretion. (*Carmony*, at p. 376.) This is a "daunting task." (*Estate of Gilkison* (1998) 65 Cal.App.4th 1443, 1448 (*Gilkison*).) However, if in the end we have "'any doubts'" as to whether plaintiffs have carried their burden, we must resolve those doubts in favor of vacating the void order or judgment. (*Rappleyea*, *supra*, 8 Cal.4th at p. 980.)

We have no doubt that the probate court acted well within its discretion in declining to vacate the void 2013 Order. The court considered the two factors we suggested as relevant to the exercise of discretion under section 473, subdivision (d)—namely, (1) "whether Shirley's participation in the 2012 proceedings regarding the petition to reform the sixth amendment and power of attorney would have led to a different result," and (2) "whether plaintiffs [had been] diligent in bringing their motion to [vacate]."

With regard to the first factor, the question was whether plaintiffs could articulate a "sufficiently meritorious" basis for concluding that the probate court would not accept Shirley's lawyer's claim of a scrivener's error if the 2012 petition were relitigated now. (*In re Marriage of Park* (1980) 27 Cal.3d 337, 346 ["sufficiently meritorious claim" required, but not proof "with certainty that a different result would obtain"]; *Olivera v. Grace*

17

(1942) 19 Cal.2d 570, 578-579 [same]; *Mechling v. Asbestos Defendants* (2018) 29 Cal.App.5th 1241, 1246-1247 [same].)  In evaluating this factor, the court weighed the sworn testimony of Shirley's lawyer attesting to Shirley's actual intent and the evidence of Shirley and Theodore's longstanding marriage against the inference proffered by plaintiffs that Shirley must not have intended to allow Theodore to alter the Trust on her behalf because Theodore's decision to file the 2012 petition rather than have Shirley re-execute amended versions of the sixth amendment and power of attorney meant that Shirley's position must have been unfavorable to his.  As between firsthand evidence (on the one hand) and a proffered inference that is at most reasonable and at best speculative (on the other hand), the probate court did not abuse its discretion in giving greater weight to the firsthand evidence.  We cannot gainsay a trial court's selection of one inference over another.  (*Uriarte*, *supra*, 51 Cal.App.4th at p. 790.)  Plaintiffs also suggest that Shirley had no reason to disinherit them, but that does not speak to Shirley's intent to authorize Theodore to act on her behalf—and hence is irrelevant to the question before the probate court.

    With regard to the second factor, the question was whether plaintiffs acted with reasonable diligence in filing their March 2018 petition to vacate the 2013 Order.  When evaluating whether a party acted with diligence, the focus is on what the party "knew or should have known." (*Drake v. Pinkham* (2013) 217 Cal.App.4th 400, 407, 409, italics omitted.)  This includes what the party's attorney knew (*Janetsky v. Avis* (1986) 176 Cal.App.3d 799, 811) and, if the party is a minor, what the party's guardian knew (see § 416.60; *Dill v. Berquist Construction Co.* (1994) 24 Cal.App.4th 1426, 1436, fn. 7.)  Here, the trustees

18

in January 2014 sent all three adult plaintiffs and the legal guardian of the sole minor plaintiff the statutorily required notice of Theodore's death, which advised them of their right to receive a "true and complete copy of the terms of the trust" (Prob. Code, § 16061.7, subd. (g)(5)); the trustees in February 2014, in response to their request, sent the three eldest plaintiffs copies of the thirteenth and fourteenth amendments that explicitly referred to the 2013 Order.  Yet none of the plaintiffs challenged the 2013 Order until 2018, after Shirley's death and, hence, after Shirley could reaffirm the intentions she had in 2006 regarding the sixth amendment and the power of attorney.  On these facts, the probate court did not abuse its discretion in concluding that plaintiffs were not reasonably diligent and that their lassitude prejudiced the trustees.

Plaintiffs level what boil down to five arguments in response.

First, plaintiffs contend that the probate court got several facts wrong at the hearing and in its order.  What the court said at the hearing is irrelevant given that what we review is its written order.  (*Jespersen v. Zubiate-Beauchamp* (2003) 114 Cal.App.4th 624, 633 ["a judge's comments in oral argument may never be used to impeach the final order"].)  And none of the misstatements in the written order—that Shirley died in 2013 (rather than the true date in 2017) and that Shirley had disinherited grandchildren other than plaintiffs (which she did, but in trust amendments signed by Theodore on her behalf)—is material the analysis set forth above, and hence do not call into question the court's ruling.  (*Gilkison*, *supra*, 65 Cal.App.4th at pp. 1448-1449 [a trial court abuses its discretion only if it misperceives the "material facts in evidence"].)

19

Second, plaintiffs assert that the probate court applied the wrong legal standard in evaluating reasonable diligence. According to plaintiffs, reasonable diligence turns on what they *actually* knew, rather than what they *knew or should have known*. What is more, plaintiffs assert what they had to actually know is not that there was a 2013 Order but that it had the effect of disinheriting them when examined in conjunction with prior amendments to the Trust. For support, plaintiffs cite *County of San Diego v. Gorham* (2010) 186 Cal.App.4th 1215 (*Gorham*). However, *Gorham* merely notes that actual knowledge cannot cure the voidness of an order due to defective service (*id.* at p. 1229); *Gorham* does not purport to define reasonable diligence, which is what is at issue here. More to the point, reasonable diligence places an onus upon a party to take the investigatory steps that a reasonable person would take; it does not require a detailed and explicit notification of all pertinent facts.

Third, plaintiffs posit that Joshua did not receive anything that would have put him on notice of the need to inquire into his inheritance. The record does not support this position. As noted above, Joshua's guardian was notified of Theodore's death and, like his siblings, he had the right to request a copy of the trust amendments that would have alerted him to the 2013 Order. The failure to Joshua's guardian to act with reasonable diligence does not undermine the probate court's order here.

Fourth, plaintiffs analogize and distinguish a variety of cases. None of these cases is directly on point, so they do not call into question the probate court's analysis.

Lastly, plaintiffs insinuated in their reply brief on appeal and more explicitly for the first time at oral argument argued that Shirley's potential incompetence in 2012 renders the denial

20

of relief an abuse of discretion.  We reject this assertion because it does not relate to any factor relevant to the exercise of that discretion.  Shirley's incompetence does not tend to support a finding that the result of the 2012 proceeding would have been any different; nor could it, because if Shirley were incapable of giving testimony in 2012, the trial court would have been faced with the same evidence it was actually faced with and would have come to the same result.  Shirley's incompetence in 2012 also does not have any bearing on whether plaintiffs were reasonably diligent between 2014 and 2017.  At most, Shirley's incompetence in 2012 is relevant to whether she was entitled to notice in 2012 which, as we have discussed earlier, has no effect on the applicability of section 473, subdivision (d).

## DISPOSITION

The order is affirmed.  The trustees are entitled to their costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
HOFFSTADT


We concur:


_____, P. J.
LUI


_____, J.
CHAVEZ

21