Filed 10/14/25  U.S. Bank National Association v. Sepehry-Fard CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR GREENPOINT MORTGAGE TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-AR2,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>FAREED SEPEHRY-FARD,<br><br>    Defendant and Appellant. | H051882, H051922, H051965<br>(Santa Clara County<br> Super. Ct. No. 17CV314286) |

Defendant Fareed Sepehry-Fard appeals from the final judgment and other orders in plaintiff U.S. Bank National Association's (U.S. Bank) postforeclosure unlawful detainer proceeding under Code of Civil Procedure section 1161a.[1]  We affirm.

## I.    BACKGROUND

U.S. Bank filed its unlawful detainer complaint against Sepehry-Fard in 2017.  U.S. Bank alleged that it purchased real property at a foreclosure sale, perfected title under the sale by recording the trustee's deed upon sale, and served a three-day notice to quit, and that Sepehry-Fard continued in possession of the property.  In answer,

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

Sepehry-Fard admitted that he retained possession of the property. Years of litigation ensued.[2]

In 2023, after Sepehry-Fard's midtrial medical emergency resulted in a mistrial, U.S. Bank moved for summary judgment. Over Sepehry-Fard's opposition, the trial court granted the motion in January 2024. The trial court also struck a statement of disqualification Sepehry-Fard filed concurrently with his responses to the trial court's tentative ruling.

The trial court entered judgment, which Sepehry-Fard unsuccessfully moved to vacate. Sepehry-Fard timely noticed appeals from the January 2024 order, the judgment entered later that month, and the denial of his motion to vacate the judgment.

## II. DISCUSSION

On appeal, the trial court's judgment is presumed correct. (See *Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609 (*Jameson*).) Sepehry-Fard must overcome the presumption by demonstrating error on the record before us. (*Id*. at p. 609.) As a self-represented litigant, he "is entitled to the same, but no greater, consideration than other litigants and attorneys" and "is held to the same restrictive rules of procedure as an attorney." (*Nelson v. Gaunt* (1981) 125 Cal.App.3d 623, 638–639.) These rules of procedure require, among other things, organizing one's brief into separate points and supporting each point with reasoned argument, authority, and record citations. (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 153 (*United Grand*).) Although as a matter of discretion we will "consider arguments for which we can discern a legal or factual basis in the briefs," we will neither " 'make other arguments for' " an appellant nor " 'speculate about which issues [appellant] intend[ed] to raise.' " (*Ibid*.)

As we will explain, Sepehry-Fard has not demonstrated error.

---

[2] The Clerk's Transcript before us spans over 15,000 pages.

**A.** *No Automatic Stay*

Sepehry-Fard contends that all trial court proceedings after his unsuccessful earlier appeal (*U.S. Bank National Association v. Sepehry-Fard* (Dec. 27, 2024, H049652) [nonpub. opn.]) violated section 916's provision for an automatic stay. Sepehry-Fard's earlier appeal challenged the trial court's denial of his interlocutory motion for monetary and injunctive relief. The trial court proceedings pending our adjudication of that appeal did not violate the automatic stay because section 916 does not apply to unlawful detainer proceedings.

In civil actions, "the perfecting of an appeal stays proceedings in the trial court upon the judgment or order appealed from or upon the matters embraced therein or affected thereby." (§ 916, subd. (a).) But section 916's automatic stay applies to civil actions, not special proceedings. (See *Blizzard Energy, Inc. v. Schaefers* (2021) 71 Cal.App.5th 832, 843.) An unlawful detainer is a special proceeding. (See *Tide Water Assoc. Oil Co. v. Superior Court* (1955) 43 Cal.2d 815, 824 (*Tide Water*); *Palm Property Investments LLC v. Yadegar* (2011) 194 Cal.App.4th 1419, 1424 [" 'Unlawful detainer is a unique body of law and its procedures are entirely separate from the procedures pertaining to civil actions generally' "].) "[R]elative to new trials and appeals," the unlawful detainer statutes adopt provisions generally applicable to civil actions "except insofar as they are inconsistent with the provisions of [the unlawful detainer statutes] or with rules adopted by the Judicial Council." (§ 1178; see also § 1177.) The unlawful detainer statutes provide that even "[a]n appeal taken by the defendant shall not automatically stay proceedings upon the judgment"; a defendant must instead petition for stay of the judgment. (§ 1176, subd. (a).)

We treated Sepehry-Fard's novel attempt to enjoin the unlawful detainer proceeding as appealable under section 904.1. (*U.S. Bank National Association v. Sepehry-Fard*, *supra*, H049652.) But we did not stay the proceedings in the trial court. His unsuccessful motion for an injunction and appeal do nothing to override the unlawful

3

detainer statutes, which contemplate an expeditious proceeding where even an appeal of the final judgment does not automatically stay proceedings upon the judgment. (See §§ 1170.5, 1176; *Martin-Bragg v. Moore* (2013) 219 Cal.App.4th 367, 385 (*Martin-Bragg*) [explaining that "denial of certain procedural rights enjoyed by litigants in ordinary actions is deemed necessary in order to prevent frustration of the summary proceedings by the introduction of delays and extraneous issues"].)

**B.** *Sepehry-Fard's Appeal from the January 2024 Order*

The grant of summary judgment is reviewable on appeal from the final judgment. (See *Saben, Earlix & Associates v. Fillet* (2005) 134 Cal.App.4th 1024, 1030.) In light of Sepehry-Fard's separate appeal from the judgment (No. H051882), we accordingly dismiss as superfluous his appeal from the antecedent January 2024 order granting summary judgment (No. H051922).

Although the January 2024 order also struck Sepehry-Fard's statement of disqualification, the striking of that statement may be reviewed only by writ of mandate. (§ 170.3, subd. (d).) Consistent with this limitation, Sepehry-Fard unsuccessfully petitioned this court for a writ of mandate concerning the trial judge's alleged disqualification in *Sepehry-Fard v. Superior Court*, case number H051750. Our denial of his petition is now final.

**C.** *Summary Judgment*

**1.** *Service and Continuance to Accommodate Disability*

Sepehry-Fard contends that he was not served with the summary judgment motion and, due to his medical conditions, lacked adequate time to respond. The trial court did not abuse its discretion in proceeding with the summary judgment motion after granting Sepehry-Fard a lengthy extension due to his health. Nor has he substantiated any deficiency in service or disclosed any reason his defense might have benefitted from more time to prepare his opposition.

4

### a. *Additional Background*

U.S. Bank filed its moving papers, and proof of service by mail, in April 2023. Later that month, Sepehry-Fard filed a document denying receipt of service and representing that he was unable to participate in legal proceedings until October, on his physicians' orders.

The next month, Sepehry-Fard filed two doctors' notes. A cardiologist described a March 2023 cardiac event and stroke and stated that it would be "helpful for [Sepehry-Fard] to limit stress over the next few months." A neurologist "order[ed]" Sepehry-Fard not to participate in any legal proceedings until at least November 1, 2023, warning that the failure to comply would put his life "in grave jeopardy." On this basis, the trial court continued the motion hearing to November and gave Sepehry-Fard until October to file his opposition.

In September, Sepehry-Fard filed another note from the neurologist "order[ing]" him not to participate in legal proceedings until at least May 1, 2024. The neurologist acknowledged that Sepehry-Fard had "made some progress by addressing [his] health issues" but explained that "these medical events . . . had a cumulative effect on [his] health that require[d] further resolution." The neurologist instructed Sepehry-Fard not to take his past events "lightly."

After an unreported November hearing to discuss a further continuance, the trial court set a December deadline for Sepehry-Fard to file an opposition and a January 2024 hearing date. Citing "substantial delay . . . caused by [Sepehry-Fard]'s medical issues" to date, the trial court determined that further "delay of the summary judgment hearing until May 1, when taken together with all the past delays, would 'fundamentally alter the nature of the service, program, or activity' " because U.S. Bank was entitled to have its unlawful detainer adjudicated in a reasonable timeframe. The trial court highlighted that Sepehry-Fard had recently filed a brief and that adjudicating the summary judgment

motion would require only filing an opposition and attending a hearing. But the trial court refused to set trial before May 2024.

On his December deadline, Sepehry-Fard filed extensive document-by-document opposition to the summary judgment motion, claiming that he was not served with the moving papers but his family members alerted him "that instruments were filed in court." He also filed additional apparently unauthorized filings before the hearing date.

**b.** *Accommodation*

Sepehry-Fard has not shown that the trial court abused its discretion in denying him a further continuance due to his disability.

California Rules of Court, " '[r]ule 1.100(a) and (b) allows persons with disabilities . . . to apply for accommodations to ensure full and equal access to the judicial system. . . . Under the appropriate circumstances, an accommodation may be a trial continuance.' " (*Friends of South Fork Gualala v. Department of Forestry & Fire Protection* (2024) 106 Cal.App.5th 1180, 1194 (*FSFG*).) Requests " 'must include a description of the accommodation sought, along with a statement of the medical condition that necessitates the accommodation.' " (*Gropen v. Superior Court* (2023) 89 Cal.App.5th 1068, 1075.) A court does not abuse its discretion by denying a properly stated request if "the ' "accommodation would fundamentally alter the nature of the service, program, or activity" ' " (*FSFG*, at p. 1194, quoting Cal. Rules of Court, rule 1.100(f)(3)) or "the applicant fails to satisfy the requirements of the rule" (*Gropen*, at p. 1076).

The trial court's order evinces two reasons for denying the request for another continuance: (1) further delaying the summary judgment hearing would fundamentally alter the nature of the service, program, or activity; and (2) the request did not demonstrate the need to delay the summary judgment hearing until May 2024. Because both reasons are supported by the record, the trial court did not abuse its discretion.

This 2017 unlawful detainer remained pending after a mistrial in 2023 when U.S. Bank filed the operative summary judgment motion, and Sepehry-Fard's second request to continue the summary judgment hearing would have left U.S. Bank's filed motion pending for more than a year. The court did not abuse its discretion in concluding that this extensive delay would fundamentally alter the nature of the unlawful detainer special proceeding. (See *Martin-Bragg*, *supra*, 219 Cal.App.4th at p. 385; see also *FSFG*, *supra*, 106 Cal.App.5th at p. 1197 ["it is fair to say, as the court did here, that permitting FSFG to continue to interpose its own open-ended scheduling preferences 'fundamentally alter[ed] the nature' of this expedited [California Environmental Quality Act] proceeding"].)

And the differences between Sepehry-Fard's May 2023 doctors' notes and his September 2023 doctor's note support the trial court's determination that delaying the summary judgment motion was unnecessary. In May 2023 the cardiologist and neurologist were in apparent agreement that at least a few months removed from stressors would help Sepehry-Fard's recovery, with the neurologist opining that a six-month delay was necessary to mitigate the risk of another event. In September 2023, the only note came from the neurologist who acknowledged Sepehry-Fard's progress in addressing his health issues and stopped short of including the dire language of the May 2023 letter. Given Sepehry-Fard's improvement as reflected by the relative weakness of the evidence in support of his claim to need a further six-month continuance, he has not shown that the trial court abused its discretion in permitting only a limited further extension of the summary judgment deadlines (while deferring trial for the full period requested). (See *Vesco v. Superior Court* (2013) 221 Cal.App.4th 275, 280 [party opposing continuance had right to trial "as soon as circumstances permit"].)

### c. *Service*

Sepehry-Fard has not shown prejudice from any deficiency in service of the motion, if any. His " 'appearance . . . at the hearing of [the] motion and his . . .

7

opposition to the motion on its merits is a waiver of any defects or irregularities in the notice of motion.' " (See *Carlton v. Quint* (2000) 77 Cal.App.4th 690, 697 [noting " '[t]his rule applies even when no notice was given at all' "]; *National Grange of Order of Patrons of Husbandry v. California Guild* (2017) 17 Cal.App.5th 1130, 1147–1148; *Arambula v. Union Carbide Corp.* (2005) 128 Cal.App.4th 333, 342–343 [collecting cases].) Sepehry-Fard's own filings reflect that he was aware of the summary judgment motion in April 2023, the month it was filed and—according to U.S. Bank's proof of service—mailed to him. Sepehry-Fard filed his opposition in December 2023, well after the time allotted by statute. Having opposed the motion on the merits and appeared at the motion hearing, Sepehry-Fard cannot found his appeal on the assertion that he did not receive the documents that were served on him. We accordingly turn to the merits.

## 2. *Standard of Review*

"Summary judgment is properly granted when there is no triable issue as to any material fact and the moving party is entitled to judgment as a matter of law." (*Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 67, citing Code Civ. Proc., § 437c, subd. (c).) A plaintiff moving for summary judgment must " 'prove[] each element of the cause of action.' " (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853 (*Aguilar*); § 437c, subd. (p)(1).) If the plaintiff carries the "initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; . . . the [defendant] is then subjected to a burden of production . . . to make a prima facie showing of the existence of a triable issue of material fact" (*Aguilar*, at p. 850) "as to the cause of action or a defense thereto" (§ 437c, subd. (p)(1)).

We review de novo the trial court's decision to grant summary judgment. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767, citing Code Civ. Proc., § 437c, subd. (c).) In so doing, we "view the evidence in a light favorable to . . . the [opposing] party [citation], liberally construing [Sepehry-Fard's] evidentiary submission while strictly scrutinizing [U.S. Bank's] own showing, and resolving any evidentiary

8

doubts or ambiguities in [Sepehry-Fard's] favor." (*Saelzler*, at p. 768.) While the party opposing summary judgment may rely on inferences, " 'those inferences must be reasonably deducible from the evidence, and not such as are derived from speculation, conjecture, imagination, or guesswork.' " (*Santa Clara Valley Water District v. Century Indemnity Co.* (2023) 89 Cal.App.5th 1016, 1035.)

Although we review de novo, it is Sepehry-Fard's burden, as the appellant, to show error. (*Villalobos v. City of Santa Maria* (2022) 85 Cal.App.5th 383, 388.) Accordingly, we direct our attention to Sepehry-Fard's appellate contentions and do not ourselves " ' "cull the record for the benefit of the appellant . . . to attempt to uncover . . . triable issues." ' " (*Golightly v. Molina* (2014) 229 Cal.App.4th 1501, 1519; see also *Helm v. City of Los Angeles* (2024) 101 Cal.App.5th 1219, 1228, fn. 5; *Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 684.)

3. ***The Nonjudicial Foreclosure Process and Unlawful Detainer Principles***

When a borrower defaults, the beneficiary under a deed of trust may declare a default and proceed with a nonjudicial foreclosure sale. (Civ. Code, § 2924.) After the trustee records the notice of default and election to sell and has waited at least three calendar months (Civ. Code, § 2924, subd. (a)(2)–(4)), a notice of sale must be published, posted, mailed and recorded at least 20 days before the sale (Civ. Code, § 2924f), a public auction to the highest bidder (Civ. Code, § 2924g, subd. (a)). (See generally *Royal Thrift & Loan Co. v. County Escrow, Inc.* (2004) 123 Cal.App.4th 24, 32.) The trustee's sale is "deemed final upon the acceptance of the last and highest bid, and shall be deemed perfected as of 8[:00] a.m. on the actual date of sale if the trustee's deed is recorded within 15 calendar days after the sale . . . ." (Civ. Code, § 2924h, subd. (c); *Dr. Leevil, LLC v. Westlake Health Care Center* (2018) 6 Cal.5th 474, 481, italics omitted (*Dr. Leevil*).) A recital in the trustee's deed "of compliance with all requirements" regarding service of the notice of default "shall constitute prima facie evidence of compliance." (Civ. Code, § 2924, subd. (c); see also *Royal Thrift*, at p. 32.)

9

Unlawful detainer proceedings are " 'intended and designed to provide an expeditious remedy for the recovery of possession of real property.' " (*Coyne v. De Leo* (2018) 26 Cal.App.5th 801, 805; § 1161 et seq.) " '[T]he unlawful detainer statutes are to be strictly construed and . . . relief not statutorily authorized may not be given due to the summary nature of the proceedings.' " (*Dr. Leevil*, *supra*, 6 Cal.5th at p. 480.) Because the remedy of unlawful detainer is " 'purely statutory in nature, it is essential that a party seeking the remedy bring [it]self clearly within the statute.' " (*Ibid*.)

In a postforeclosure unlawful detainer proceeding, the plaintiff must show (1) "the property has been sold in accordance with [s]ection 2924 of the Civil Code" (2) "under a power of sale contained in a deed of trust executed by [the] person, or a person under whom such person claims," (3) holding over in possession after the service of a notice to quit, and (4) "the title under the sale has been duly perfected." (Code Civ. Proc., § 1161a, subd. (b)(3).)

### 4.     *U.S. Bank's Initial Burden*

U.S. Bank made the required prima facie showing on each element of its claim, carrying its initial burden.

#### a.     *Sepehry-Fard's Evidentiary Objections*

The trial court overruled Sepehry-Fard's objections to U.S. Bank's evidence, reasoning that the objections "do not conform to California Rule of Court rule 3.1354 and instead essentially serve as additional space for . . . substantive argument."

We agree with the trial court's assessment and identify no abuse of discretion. (See *Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 852 [stating that the weight of authority supports review of evidentiary rulings on summary judgment for abuse of discretion]; *In re Automobile Antitrust Cases I & II* (2016) 1 Cal.App.5th 127, 141.) Broadly, Sepehry-Fard used his objections to argue that the content of the declarations was untrue but did not supply rule-compliant challenges to the admissibility

10

of evidence. So we will consider U.S. Bank's evidence in assessing whether it carried its initial burden.

### b. *U.S. Bank's Evidence*

In a 2007 adjustable-rate note, Sepehry-Fard promised to pay $1.3 million to lender GreenPoint Mortgage Funding, Inc. (GreenPoint). The note was secured by a 2007 deed of trust, which identified Sepehry-Fard as the borrower, GreenPoint as the lender, Marin Conveyancing Corp. (Marin) as the trustee, and Mortgage Electronic Registration Systems, Inc. (MERS) or its successors and assigns as the beneficiary, "acting solely as a nominee for Lender and Lender's successors and assigns."

Sepehry-Fard defaulted on the loan in July 2011.

Around July 2012, Nationstar Mortgage LLC (Nationstar) began servicing the loan under a Pooling & Servicing Agreement (PSA) for U.S. Bank in its capacity as trustee for GreenPoint Mortgage Trust Mortgage Pass-Through Certificates, Series 2007-AR2 (the Certificates). In 2013, MERS assigned its beneficial interest in the deed of trust to Nationstar, and this assignment was recorded. In 2014, Nationstar substituted Clear Recon Corp. (Clear Recon) for Marin as the trustee, and this substitution was recorded.

In 2015, trustee Clear Recon issued and had recorded a notice of default. The notice provided that the default was $311,519.58 as of September 8, 2015. Clear Recon mailed the notice of default and related notices to Sepehry-Fard.

In January 2017, Nationstar assigned its beneficial interest to U.S. Bank as trustee for the Certificates and caused recordation of the assignment.

In February 2017, Clear Recon gave notice of the trustee's sale and had the notice recorded. The scheduled sale date was more than three months after the notice of default was recorded and more than 20 days after the notice of trustee's sale was recorded.

After four postponements, the trustee's sale was held on July 6, 2017, with three people present. Beneficiary U.S. Bank as trustee for the Certificates purchased the property with a credit bid of $1,445,498.74. Clear Recon's trustee's deed included a

11

recital that Clear Recon "complied with all applicable statutory requirements of the State of California and performed all duties required by [the deed of trust], including" those related to service and publication of the notice of default and notice of sale. Nationstar had the deed recorded on July 20, 2017.

At U.S. Bank's direction, a notice to quit was posted on the property on July 27, 2017, and served by mail the next day. Sepehry-Fard admitted that he remained in possession of the property. The trial court noted that U.S. Bank filed its unlawful detainer complaint on August 10, 2017.

### c. *Sufficiency*

In its moving papers U.S. Bank made a prima facie showing that the property was sold in accordance with section 2924 of the Civil Code under a power of sale contained in a deed of trust executed by Sepehry-Fard; that U.S. Bank perfected title before serving the notice to quit; and that Sepehry-Fard continued in possession after expiration of the notice period. (See Code Civ. Proc., § 1161a, subd. (b)(3); *Dr. Leevil*, *supra*, 6 Cal.5th at p. 477.)

Of the arguments Sepehry-Fard raises in opposition, we first address those few that relate to U.S. Bank's initial burden.

First, Sepehry-Fard argues that U.S. Bank has not provided sufficient evidence of compliance with Civil Code section 2924, subdivision (a)(6) because it has not shown that the debt, or a beneficiary, exists. We disagree: Through evidentiary declarations and recorded documents running from the origination of the loan through sale, U.S. Bank has made a prima facie showing on these issues.

Second, Sepehry-Fard asserts that U.S. Bank is required to produce more evidence of its own existence and of its retainer agreement with its counsel. We again disagree. The existence of U.S. Bank as trustee for the Certificates is implied in its status as the beneficiary under the deed of trust. We are aware of no authority, and Sepehry-Fard has

12

supplied none, requiring U.S. Bank to produce more evidence of its existence or its retention of counsel to carry its initial burden in an unlawful detainer proceeding.

Third, Sepehry-Fard contends that U.S. Bank has failed to adduce sufficient evidence that the deed of trust and assignments were supported by consideration. Even if U.S. Bank needed to show that the deed of trust and assignments were supported by consideration, "[a] written instrument is presumptive evidence of a consideration." (Civ. Code, § 1614.) And the documents on their face memorialize an exchange of consideration: The deed of trust secures borrower's promise to pay $1.3 million debt to lender on the terms in the note; the assignments are "for good and valuable consideration" (capitalization omitted) and "for value received" (some capitalization omitted). No more is required. (See Civ. Code, §§ 1614–1615.)

Fourth, Sepehry-Fard argues that U.S. Bank did not perfect title because the title it obtained through the foreclosure sale was clouded by a lis pendens. To be sure, U.S. Bank was required to "perfect title [under the sale] before serving the three-day written notice to quit." (*Dr. Leevil*, *supra*, 6 Cal.5th at p. 477.) But in the ordinary course the recordation of the trustee's deed is the last step to perfect title (see *id*. at pp. 479–480; *Garfinkle v. Superior Court* (1978) 21 Cal.3d 268, 275), and U.S. Bank completed that step before serving the notice to quit. Assuming a lis pendens clouds title under the sale (*Dr. Leevil*, at p. 484),[3] we are not persuaded that U.S Bank was required to prove the absence of any clouds on title to carry its *initial* burden of proving perfection of title under the sale. U.S. Bank's showing was, of itself, sufficient—Sepehry-Fard had an opportunity to adduce his own evidence to raise a triable issue of material fact after the burden shifted to him.

_____

[3] Although *Dr. Leevil* contains broad language about the litigation of clouds on title, the issue before it was whether the recordation of the trustee's deed was required before service of the notice to quit. (*Dr. Leevil*, *supra*, 6 Cal.5th at p. 477.) That requirement was satisfied here.

### 5.    *Sepehry-Fard's Burden*

Because U.S. Bank carried its initial burden, the burden of production shifted to Sepehry-Fard.  In reviewing a summary judgment, we " 'must consider only those facts before the trial court, disregarding any new allegations on appeal.' " (*Uriarte v. United States Pipe & Foundry Co.* (1996) 51 Cal.App.4th 780, 790 (*Uriarte*); see also *Tsasu LLC v. U.S. Bank Trust, N.A.* (2021) 62 Cal.App.5th 704, 722, fn. 6 [declining to consider new evidence submitted after summary judgment in support of motion for new trial]; *California Advocates for Nursing Home Reform v. Bonta* (2003) 106 Cal.App.4th 498, 515, fn. 8 (*California Advocates*) [declining to grant unopposed appellate request for judicial notice]; *Havstad v. Fidelity National Title Ins. Co.* (1997) 58 Cal.App.4th 654, 661 [declining to consider theory advanced on appeal but not factually developed in the trial court].) The only evidentiary filings he submitted in opposition to U.S. Bank's motion were two requests for judicial notice, through which he sought judicial notice of facts associated with 20 exhibits.[4]  As we will explain, these requests do not satisfy Sepehry-Fard's burden.

Preliminarily, the trial court denied at least Sepehry-Fard's first request for judicial notice, explaining that Sepehry-Fard had failed to establish that his requests were proper.[5] This discretionary ruling is entitled to deference on appeal.  (See *Salazar v. Upland Police Dept.* (2004) 116 Cal.App.4th 934, 946; *Center for Biological Diversity v.*

---

[4] Many of Sepehry-Fard's other opposition filings—briefing on the merits and various objections—contained factual assertions.  Assertions in briefs are not evidence and Sepehry-Fard's appellate citation to his own arguments does not show that he submitted evidence substantiating his arguments in the summary judgment record.  (See *Alki Partners, LP v. DB Fund Services, LLC* (2016) 4 Cal.App.5th 574, 590 (*Alki*).)

[5] Sepehry-Fard filed two requests, one with his opposition papers and one a few weeks later.  The former covered 19 exhibits, the second repeated one of the 19 and added a request for judicial notice of a California Supreme Court opinion.  The trial court denied Sepehry-Fard's request for judicial notice, in the singular, and only expressly referred to the first request.  The trial court never acknowledged the second request.

14

*Department of Conservation, etc.* (2019) 36 Cal.App.5th 210, 227.)[6]  But even if we look past the opacity of Sepehry-Fard's request, we, like the trial court, reject Sepehry-Fard's contentions on the merits.

First, Sepehry-Fard contends that U.S. Bank cannot maintain a claim against him because it does not exist.  But if considered, his requests for judicial notice only confirm U.S. Bank's existence.

Sepehry-Fard's request reflects that the Office of the Comptroller of Currency's (OCC) list of active national banks as of February 28, 2023, identified U.S. Bank as an active national bank with an Ohio address.  And the Federal Deposit Insurance Corporation (FDIC) web page he provided indicates that U.S. Bank National Association with "FDIC Cert#" 5134 was closed by merger or acquisition on August 9, 2001, *and succeeded by* U.S. Bank National Association, an "FDIC Insured" institution with "Cert" 6548.  The Minnesota Secretary of State records he offered indicate that U.S. Bank National Association was a nonprofit incorporated in Minnesota in 2015 and dissolved in Minnesota in 2017, which does not contradict the evidence that U.S. Bank is an entity—there is nothing to suggest that Minnesota incorporation is the basis for U.S. Bank's existence.[7]  And the PSA, which he identified by web address, makes U.S. Bank the trustee.

---

[6] U.S. Bank argues that Sepehry-Fard forfeited any challenge to the judicial notice ruling by failing to make one in his opening appellate brief.  But in his opening brief Sepehry-Fard quoted the trial court's denial of his request for judicial notice and argued that the trial judge had "no jurisdiction to deny my mandatory judicial notices based on the mandatory citations that are in my request for mandatory judicial notice, they are not discretionary, but again, they are mandatory."  We understand Sepehry-Fard's position to be that no reasonable judge would have denied his request for judicial notice.

[7] In its appellate brief, U.S. Bank misidentified these as Michigan records.  Sepehry-Fard responded with an October 31, 2024 appellate motion requesting judicial notice of (1) the asserted fact that U.S. Bank's attorneys defrauded this court through their misidentification, (2) a document he prepared showing the web page for "FDIC Cert #" 5134 juxtaposed with the web page for "FDIC Cert #" 6548 showing that the

15

Second, Sepehry-Fard contends, mainly in an appellate motion requesting an evidentiary hearing, that U.S. Bank's appellate counsel cannot represent it because they lack a retainer agreement. As proof, Sepehry-Fard supplied us what appears to be an e-mail in which Sepehry-Fard asked for various documents including U.S. Bank's retainer agreement with counsel. The request, even if sent and declined, does not suggest that counsel lacks authority to represent U.S. Bank. We reject Sepehry-Fard's challenge to counsel's authority and deny Sepehry-Fard's July 10, 2024 motion for an evidentiary hearing on U.S. Bank's relationship with its attorneys.

Third, Sepehry-Fard contends that the beneficial interest in the note is untraceable and, to the extent there is a beneficiary, U.S. Bank is not authorized to act as a trustee. But Sepehry-Fard offered no evidence raising a factual dispute on these issues.

Asserting that the note is invalid because his signature was forged and Larry Kern's signature on behalf of GreenPoint was "fabricated,"[8] Sepehry-Fard produced no evidence of forgery or fabrication in the trial court.[9]

Asserting that MERS, under its terms and conditions, could not create or transfer any beneficial interest, Sepehry-Fard has neither produced evidence of MERS deviating

preceding and succeeding entities had different addresses, and (3) a request to file an oversized reply brief containing the same page. We deny the request for judicial notice as, to the extent it has any relevance, it seeks to expand our record beyond what was presented to the trial court. (See *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3 (*Vons*).) And the difference between the addresses shown on the FDIC web pages does not suggest U.S. Bank's nonexistence. Sepehry-Fard's October 31, 2024 motion is denied.

[8] Sepehry-Fard points out that Kern's signature is not accompanied by a date. Sepehry-Fard asserts that this cancels the note but provides no legal basis for this assertion.

[9] Although he did not make the point in the trial court proceedings or his opening brief on appeal, Sepehry-Fard has directed our attention to an online report issued by the clerk of court for Osceola County, Florida in 2014. The report is not properly before us. (See *Vons*, *supra*, 14 Cal.4th at p. 444, fn. 3.)

16

from its terms and conditions nor articulated how any such deviation could break the chain of title. The deed of trust reflected that MERS was the nominee beneficiary for GreenPoint, which was in turn entitled to repayment of the loan. And the first assignment reflected that MERS as GreenPoint's nominee assigned the beneficial interest in the deed of trust to Nationstar.

Asserting that Clear Recon is a stranger to him, his home, and the loan, Sepehry-Fard offers no evidence that would call into question U.S. Bank's documents showing Clear Recon's role in the foreclosure.

Asserting that he unilaterally terminated the mortgage, Sepehry-Fard points to various documents, but none of these raises a triable issue of the note's validity. In May 2012, Sepehry-Fard purported to revoke the mortgage for cause based on fraud. In August 2015, Sepehry-Fard purported to revoke the deed of trust. In July 2016, Sepehry-Fard purported to revoke any power of attorney for any person who claimed to represent him in connection with the mortgage. In February 2017, Sepehry-Fard prepared a "conditional promissory note" (capitalization & underscoring omitted) in which he promised to pay the alleged debt—"subject to verification of the amount . . . under oath" before a 72-hour deadline—then announced that the debt was discharged because he did not receive a response within 72 hours. Rescission of a contract, however, cannot be accomplished while retaining the benefit of the contract. (See *Nmsbpcsldhb v. County of Fresno* (2007) 152 Cal.App.4th 954, 959–960; *U.S. Bank National Assn. v. Naifeh* (2016) 1 Cal.App.5th 767, 780.)

Asserting that U.S. Bank's failure to comply with a court order in another case precludes it from taking possession in this case, Sepehry-Fard produces no evidence of the noncompliance. (See generally *Salas v. Sierra Chemical Co.* (2014) 59 Cal.4th 407, 432 [describing "the equitable doctrine of unclean hands"].) In February 2017, the trial court, in another case initiated by U.S. Bank, ordered U.S. Bank to provide an accurate "payoff/reinstatement statement" within two days. U.S. Bank voluntarily dismissed the

17

action in October 2017 and voluntarily dismissed a different action against Sepehry-Fard in April 2020. But we see no evidence in the summary judgment record that U.S. Bank failed to comply with the order.[10] Mere assertions in Sepehry-Fard's briefs are not evidence. (See *Alki*, *supra*, 4 Cal.App.5th at p. 590.)

Relatedly, Sepehry-Fard asserts that U.S. Bank in 2017 inconsistently represented the amount of the debt.[11] But if Sepehry-Fard means to argue that the foreclosure sale can therefore be equitably set aside, he must address prejudice. (See *Turner v. Seterus, Inc.* (2018) 27 Cal.App.5th 516, 525 (*Turner*).) And Sepehry-Fard provided no evidence that he could or would tender any actual amount that might have sufficed to prevent the foreclosure sale. (See *id*. at p. 531 [applying tender requirement to reinstatement context but requiring only tender of amount necessary to reinstate loan].) There are exceptions to the tender requirement. (See *Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 112–113.) Sepehry-Fard need not tender to attack the validity of the debt. (*Ibid*.) But to rely on the alleged inaccuracy of a mortgage payoff statement as the basis challenging the sale, when there is no dispute that he missed several years of payments, he must produce some evidence that he would have paid an amount that could at least reinstate the loan. And Sepehry-Fard's "conditional promissory note" is not a valid tender. (See *Arnolds*

---

[10] Clear Recon caused the notice of trustee's sale to be recorded within two days of the trial court's order. That document provided that "[t]he total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is: $1,781,069.01." Sepehry-Fard also requested judicial notice of a February 2017 mortgage payoff statement mailed to his address, albeit directed to "Lydia Ferrer," (some capitalization omitted) stating that the mortgage payoff amount was $1,778,743.96.

[11] Sepehry-Fard compares a February 2017 letter stating pay-in-full amount to a June 2017 letter stating the loan balance. But a June 2017 letter in Sepehry-Fard's request for judicial notice identifies a pay-in-full amount that is higher than the one stated in February 2017.

18

*Management Corp. v. Eischen* (1984) 158 Cal.App.3d 575, 580 [tender must be unconditional to be valid].)

Asserting as his principal contention that he owes nothing to anyone, Sepehry-Fard offers only an opinion from a legal blog that no entity may foreclose after securitization of a loan.[12]  But this opinion is not evidence that any entity lacked authority as the beneficiary at any time.[13]

More specifically, Sepehry-Fard asserts that U.S. Bank could not act as trustee for the Certificates because the OCC did not authorize U.S. Bank to act in that capacity, the PSA was not signed, and the securitized trust does not exist.[14]  But he produced no evidence to support these assertions in conflict with U.S. Bank's prima facie showing. To the contrary, Sepehry-Fard's records confirm that U.S. Bank has registered as a national bank, and national banks may act as trustees.  (See 12 U.S.C. § 92a; see also *Vallejo v. U.S. Bank National Association* (S.D.Fla. Nov. 13, 2018, No. 18-61954-CIV) 2018 WL 11457394, p. *4 ["when acting as a trustee for a trust containing mortgages securing debt, U.S. Bank, N.A. continues to be a national bank exercising one of its

---

[12] The full hypothetical is not visible on the printout Sepehry-Fard included in his request for judicial notice, so we lack the context to understand the basis for the online legal opinion.

[13] On November 1, 2024, and June 27, 2025, Sepehry-Fard filed in this court requests for an evidentiary hearing addressing the existence of U.S. Bank, his loan account, his bank account, the custodians of records, the Certificates, the certificate holders, U.S. Bank's consideration to acquire the debt, and the retainer agreement between U.S. Bank and its attorneys, and U.S. Bank's authority to foreclose.  The evidentiary hearing on all issues relevant to summary judgment was in the trial court. Sepehry-Fard cited no legal basis and offered no persuasive reason to conduct a new evidentiary hearing rather than review the evidentiary hearing he already had.  His November 1, 2024 and June 27, 2025 requests for an evidentiary hearing are denied.

[14] Sepehry-Fard also argues that U.S. Bank and U.S. Bank "as trustee" are two different entities, both of which need separate OCC authorization.  U.S. Bank is a single entity.  It sometimes acts as a trustee.

19

enumerated powers"].)  The absence of signatures on the PSA copy that Sepehry-Fard asked the trial court to judicially notice does not suggest the original PSA was never executed.  Nothing in our record suggests that U.S. Bank lacks authority to act as trustee for the Certificates.  Nor has Sepehry-Fard articulated how this inquiry is within the proper scope of this action.  And Sepehry-Fard's assertion that the securitized trust and/or the certificate holders do not exist are nothing more than argument in briefing.

Fourth, Sepehry-Fard contends that the foreclosure sale was void due to procedural irregularities in the sale.  Specifically, Sepehry-Fard contends that his records—a December 2016 appraisal, affidavits from himself and Nasser Wahab Hamidy, and a transcript of a phone conversation—indicate that U.S. Bank and others suppressed the price at the foreclosure sale by reporting that the July 6, 2017 sale had been postponed before holding the sale on that date.[15]  We will assume these records support an inference that U.S. Bank wrongfully suppressed the sale price, but Sepehry-Fard has not tethered his claims about the sale price to the crux of this unlawful detainer proceeding—whether U.S. Bank is entitled by statute to possession of the property.[16]  Sepehry-Fard does not show how procedural defects in the sale, even a beneficiary's manipulation of the sale price, entitle him to set aside the sale and recover possession.  (See *Turner*, *supra*, 27 Cal.App.5th at p. 525; *Citrus El Dorado, LLC v. Chicago Title Co.* (2019) 32 Cal.App.5th 943, 950.)

---

[15] Because our review is limited to the evidence that was before the trial court, we deny Sepehry-Fard's July 8, 2024 request for judicial notice of audio and video recordings of the events of July 6, 2017.  (See *Uriarte*, *supra*, 51 Cal.App.4th at p. 790; *California Advocates*, *supra*, 106 Cal.App.4th at p. 515, fn. 8.)

[16] Sepehry-Fard correctly notes that it is unlawful "to fix or restrain bidding in any manner . . . at a sale of property conducted pursuant to a power of sale in a deed of trust or mortgage."  (Civ. Code, § 2924h, subd. (g).)  The present unlawful detainer action is of limited scope and has limited preclusive effect.  (See *Vella v. Hudgins* (1977) 20 Cal.3d 251, 255.)

20

Fifth, Sepehry-Fard contends that his lis pendens shows that U.S. Bank failed to perfect title.  On the summary judgment record, we disagree.

We acknowledge that Sepehry-Fard requested the trial court take judicial notice of a May 2017 lis pendens he recorded 11 weeks before U.S. Bank filed the unlawful detainer complaint.

We assume without deciding that a preexisting lis pendens could create an obstacle to "duly perfect[ing]" "title under the sale" as section 1161a, subdivision (b)(3) requires.[17]  But such a cloud is not permanent:  U.S. Bank could remove the cloud by expunging the lis pendens or resolving the underlying lawsuit.  (See *Integrated Lender Services, Inc. v. County of Los Angeles* (2018) 22 Cal.App.5th 867, 877 [" 'A lis pendens clouds title until the litigation is resolved or the lis pendens is expunged' "].)

Sepehry-Fard did not in his summary judgment papers address whether the lis pendens was effective on the date of the trustee's sale or when the notice to quit was served.  His evidence shows that it was recorded in May 2017, about two months before service of the notice to quit.  Sepehry-Fard submitted no evidence that the lis pendens

_____

[17] Sepehry-Fard reads *Dr. Leevil*, *supra*, 6 Cal.5th 474 as requiring U.S. Bank to resolve title issues that predate the trustee's sale before serving a notice to quit.  Indeed, the California Supreme Court in *Dr. Leevil* announced "a rule requiring a new owner to perfect title *before* serving its three-day notice" on an occupant.  (*Id*. at p. 484.)  But in holding that a new owner must record the trustee's deed before serving the three-day notice, the California Supreme Court also reaffirmed the long-standing principle that " '[m]atters affecting the validity of the trust deed or primary obligation itself, or other basic defects in the plaintiff's title, are neither properly raised in this summary proceeding for possession, nor are they concluded by the judgment.' " (*Id*. at p. 483, quoting *Cheney v. Trauzettel* (1937) 9 Cal.2d 158, 160 (*Cheney*); see also *Old National Financial Services, Inc. v. Seibert* (1987) 194 Cal.App.3d 460, 465 [observing that courts have long understood *Cheney* to permit an unlawful detainer on proof of " 'a sale in compliance with the statute and deed of trust, followed by purchase at such sale' " subject to " 'objections only on *that phase of the issue of title*' "].)  Given the limited evidence in opposition to U.S. Bank's motion in the trial court, we need not resolve any tension between *Cheney* and *Dr. Leevil* here.

remained on record on the later date or that the lawsuit it referred to remain pending. So Sepehry-Fard's showing, if admitted, was insufficient to create a nonspeculative inference that U.S. Bank's title under the sale was clouded by the lis pendens at any relevant time.[18]

Sixth, Sepehry-Fard contends that the absence of a gate at his property contradicts U.S. Bank's evidence about serving the notice to quit. But U.S. Bank's evidence did not refer to a gate: The process server's declaration and proof of service referred only to posting the notice on the property. So the (non)existence of a gate is not a material fact.[19]

Seventh, Sepehry-Fard contends that the foreclosure auctioneer and the process server who served the notice to quit each failed to maintain a bond issued by a surety company admitted to conduct business in this state. But Sepehry-Fard has neither directed our attention to any evidence that any bond was lacking nor supplied authority making inquiry into such bonds material to an unlawful detainer proceeding.

Eighth, Sepehry-Fard contends that a land patent from the 1800's, to which objections had to be submitted by 1888, entitles him to possess the property in

---

[18] In unsuccessful appellate motion practice, Sepehry-Fard directed our attention to motions to consolidate he filed in 2021 through which he sought to consolidate the unlawful detainer proceeding with the case referenced in the lis pendens. That Sepehry-Fard made these motions suggests that the underlying suit remained pending when U.S. Bank recorded the trustee's deed, but it does not cure the entire deficiency in Sepehry-Fard's trial court evidence. Our role is to assess whether Sepehry-Fard met his burden of production in the trial court. (See *Aguilar*, *supra*, 25 Cal.4th at pp. 850–851; *Uriarte*, *supra*, 51 Cal.App.4th at p. 790.)

[19] U.S. Bank surmises that Sepehry-Fard is referring to a September 2017 order allowing U.S. Bank to serve the complaint and summons by posting and mail. Sepehry-Fard has long since relinquished any objection based on defective service of process. (See *In re Marriage of Obrecht* (2016) 245 Cal.App.4th 1, 7–8; *Fireman's Fund Ins. Co. v. Sparks Construction, Inc.* (2004) 114 Cal.App.4th 1135, 1147.)

perpetuity.[20]  And Sepehry-Fard asserts that he is "an American Sovereign" who "holds title by nature" over his "sovereign land."  Supplied with neither evidence nor authority for these assertions, we need not address them.  (*In re Phoenix H.* (2009) 47 Cal.4th 835, 845.)

Ninth, in his reply brief, Sepehry-Fard contends that his identity was stolen.  To support this belated contention, he appends a December 16, 2023 notice of data breach to his reply and cites Civil Code section 1785.16.2, which prohibits the sale of a consumer debt to a debt collector if the consumer is a victim of identity theft and the creditor has received notice.  This 2023 notice of data breach is irrelevant to possession of the subject property following U.S. Bank's acquisition of title in a 2017 foreclosure.

### 6.      *Sepehry-Fard's Other Arguments*

Sepehry-Fard raises various general challenges to the summary judgment proceedings, none of which avail him.

First, Sepehry-Fard contends that the trial judge was biased against him.  A losing party may on appeal raise a nonstatutory claim that a final judgment is constitutionally invalid because of judicial bias.  (*People v. Chatman* (2006) 38 Cal.4th 344, 363; see also *Huang v. Hanks* (2018) 23 Cal.App.5th 179, 183 (*Huang*).)  But a " 'mere appearance of bias' " is insufficient to support disqualification on due process grounds, " 'an objective assessment of the circumstances in the particular case' " must reveal " ' " 'the probability of actual bias on the part of the judge or decision maker [that] is too high to be constitutionally tolerable.' " ' " (*People v. Peoples* (2016) 62 Cal.4th 718, 788 [discussing due process rights of criminal defendants].)  Sepehry-Fard's speculative contentions do not meet that standard.

---

[20] The land patent was not among the papers he filed in opposition to the summary judgment motion.

23

Sepehry-Fard theorizes that because the person who served as both Nationstar's CFO and the CEO for one of Clear Recon's vendors shared a common surname with the trial judge's spouse, the trial judge had a familial relationship with an interested party. But the common surname alone does not show a relationship.

Nor do Sepehry-Fard's fruitless subpoenas support his claim of bias. Sepehry-Fard attempted to subpoena the trial judge and his spouse, ostensibly to substantiate his claims of bias,[21] and now asserts that the trial judge's nonresponse to the subpoena[22] divested the trial judge of jurisdiction. We know of no authority that would permit a litigant to skirt the requirements of sections 170.6 and 170.3 and disqualify a judge by mailing subpoenas the litigant makes no attempt to enforce by statutory means. (See §§ 1991, 2020.240.)[23]

As an alternate theory of bias, Sepehry-Fard contends that Clear Recon's filing of a certificate of interested parties in federal litigation proves that unspecified judges have a financial interest in Clear Recon. Sepehry-Fard misunderstands the purpose of a certificate of interested parties. The certificate identifies the entities that have a financial interest in a party, so that a judge may recuse if the judge has an interest in any of the

---

[21] Concluding its order granting summary judgment, the trial court stated that the disposition meant that neither parties nor nonparties had to respond to Sepehry-Fard's subpoenas. Sepehry-Fard asserts that this was an improper attempt to protect the trial judge's spouse from his subpoena. We are not persuaded that the advisory comments about Sepehry-Fard's subpoenas are indicative of bias.

[22] The parties dispute generally whether Sepehry-Fard properly served his subpoenas. We express no opinion on the adequacy of service.

[23] Sepehry-Fard included various other subpoenas in the request for judicial notice filed with his opposition to summary judgment. He asserts that he received no responses and that various facts were thus admitted. But we have no record of any effort he made to enforce the subpoenas nor any viable legal basis to treat nonresponses as admissions. (Cf. *United States v. Tweel* (5th Cir. 1977) 550 F.2d 297, 299.) The mere fact that Sepehry-Fard served various subpoenas does not help him.

entities. The 2014 certificate Sepehry-Fard supplied merely indicated that Clear Recon does not have a parent corporation and no publicly held companies own any percentage of Clear Recon's stock. Nothing about the certificate indicates bias.

Nor does Sepehry-Fard's invective about the trial judge suggest judicial bias. Sepehry-Fard asserts that the trial judge lied at the summary judgment hearing about reading Sepehry-Fard's papers and afterward about Sepehry-Fard leaving the courtroom. But Sepehry-Fard has supplied neither a record of oral proceedings nor any objective basis to doubt the veracity of what the trial court might have said. (See Cal. Rules of Court, rules 8.120(b), 8.130, 8.134, 8.137.) Sepehry-Fard's bare accusation in his trial court briefing that the trial judge had received bribes from the County of Santa Clara is not evidence, either of bribes or bias. And Sepehry-Fard's dissatisfaction with the trial judge's rulings is not a proper foundation for a claim of bias. (See *Huang*, *supra*, 23 Cal.App.5th at pp. 183–184.)

Second, Sepehry-Fard contends that the summary judgment motion should not have gone forward because this case should have been consolidated with another. But he does not develop this argument with any basis for consolidating the cases, or even any description of the other case. So we have no basis to evaluate this argument, much less to conclude that Sepehry-Fard has affirmatively demonstrated error or prejudice. (See *United Grand*, *supra*, 36 Cal.App.5th at p. 153.)[24]

---

[24] Sepehry-Fard's brief directs us to an unsuccessful motion he filed in this appeal, which motion in turn cites two motions to consolidate Sepehry-Fard filed in the trial court and *Martin-Bragg*, which held that it is improper to adjudicate complex issues of title in an unlawful detainer proceeding. (*Martin-Bragg*, *supra*, 219 Cal.App.4th at p. 395.) But even if we consider the argument in the unsuccessful motion, we do not identify any complex issues of title that were resolved in the summary unlawful detainer proceeding. (Cf. *ibid*. [describing "sharply conflicting testimony . . . on key subjects—such as whether Martin-Bragg had or had not agreed to hold the property in trust and whether Mr. Hills had or had not been paid for the property's transfer to Martin-Bragg"].)

Third, Sepehry-Fard contends that the trial court engaged in ex parte communications with U.S. Bank's counsel before entering judgment. But what Sepehry-Fard cites as evidence is the proposed judgment as executed by the court, which bears a proof of service reflecting that U.S. Bank served the proposed judgment on Sepehry-Fard by mail and e-mail the same day it submitted the proposed judgment to the court. This is not an ex parte communication.

Fourth, Sepehry-Fard asserts that he deserves financial compensation and that opposing parties, their attorneys, and the trial judges should be subject to penalties up to and including death. But these affirmative claims for relief have no apparent place in an unlawful detainer proceeding.[25] Indeed, defendants are generally not permitted to file cross-complaints or counterclaims in summary unlawful detainer proceedings concerning the right to possession. (See *Glendale Fed. Bank v. Hadden* (1999) 73 Cal.App.4th 1150, 1153; see also *Tide Water*, *supra*, 43 Cal.2d at p. 824.)

Similarly, we reject Sepehry-Fard's undeveloped assertion that he was entitled to a default judgment on a cross-complaint the trial court in 2019 denied him leave to file. Although Sepehry-Fard later removed the proceeding and filed a cross-complaint in federal court, on remand the trial court denied Sepehry-Fard's motion for default judgment on his putative cross-claim. Sepehry-Fard has not shown that a trial court must give effect to a cross-complaint filed during an improvident removal and in derogation of

---

[25] On August 12, 2024, Sepehry-Fard asked us to take judicial notice of a supplemental authority letter filed in a federal appeal. The case identified in that letter is *Securities and Exchange Commission v. Jarkesy* (2024) 603 U.S. 109 (*Jarkesy*). There, the Supreme Court addressed "whether the Seventh Amendment permits the SEC to compel respondents to defend themselves before the agency rather than before a jury in federal court." (*Jarkesy*, at p. 115.) Sepehry-Fard states that the supplemental authority letter supports his request for "long overdue relief." But we are unable to discern how *Jarkesy* or the supplemental authority letter are relevant. So we deny Sepehry-Fard's August 12, 2024 request for judicial notice. (See *Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 544, fn. 4.)

both the original denial of leave to file and the limited nature of an unlawful detainer proceeding. (The sole authority he cites, *Laguna Village, Inc. v. Laborers' Internat. Union of North America* (1983) 35 Cal.3d 174, 182, construed a motion to dismiss filed in federal court as a demurrer to avoid a default.) Sepehry-Fard has shown no error in the trial court's refusal to grant him a default judgment on inoperative claims.

## D. *Motion to Vacate Judgment*

Section 473, subdivision (d) "vests trial courts with authority to 'set aside any void judgment.' But a 'trial court has no statutory power under section 473, subdivision (d) to set aside a judgment that is not void.' " (*First American Title Ins. Co. v. Banerjee* (2022) 87 Cal.App.5th 37, 44.) "A judgment is void if the trial court lacks jurisdiction in a fundamental sense, as where it lacked subject matter jurisdiction, lacked personal jurisdiction over the defendant, or granted relief the court had no power to grant. [Citations.] If the court has fundamental jurisdiction but exceeds its jurisdiction by acting contrary to its statutory duties, the judgment is merely voidable, not void." (*W. Bradley Electric, Inc. v. Mitchell Engineering* (2024) 100 Cal.App.5th 1, 13.) " 'Voidness is a legal question we review de novo; the discretionary decision whether to set aside a void judgment or order is . . . reviewed . . . for an abuse of that discretion.' " (*People v. The North River Ins. Co.* (2024) 106 Cal.App.5th 972, 977.)

Sepehry-Fard moved the trial court to vacate the judgment under section 473, subdivision (d).[26] The motion was denied on the noticed hearing date. But we have no basis to deem the judgment void: The property is in Santa Clara County, so the Santa Clara County Superior Court was the proper court to exercise jurisdiction over this unlawful detainer. (§ 392.) And as we have explained, Sepehry-Fard's various jurisdictional challenges—to U.S. Bank's standing, to the exercise of personal

---

[26] Although Sepehry-Fard invokes rule 60 of the Federal Rules of Civil Procedure and the supremacy clause of the United States Constitution, he offers no theory by which either matters in this state court proceeding under state law.

jurisdiction, and regarding his claims of right of ownership superior to the state's power—lack merit.

Sepehry-Fard's procedural arguments do not help him.

First, Sepehry-Fard contends that the trial court was required to grant the motion because U.S. Bank did not file written opposition. He relies on *Sexton v. Superior Court* (1997) 58 Cal.App.4th 1403, 1410, which discussed a Los Angeles County Superior Court local rule that created " 'an inference that [a] motion . . . is meritorious' " if a party did not file a timely written opposition. Nothing in *Sexton* suggests the rule Sepehry-Fard proposes. Were we to create such a rule ultra vires, it would perversely encourage vexatious litigation in the hopes that one's opponent would fail to oppose at least one of a barrage of meritless motions. We see no reason to endorse the litigation tactics Sepehry-Fard has deployed here.

Second, Sepehry-Fard complains that the trial court did not explain why the summary judgment was valid or respond to the arguments in his motion to vacate. But on appeal we must presume the order was correct. (*Jameson*, *supra*, 5 Cal.5th at pp. 608–609.) And Sepehry-Fard has not developed his assertion that the trial court was required to provide a written statement explaining why the judgment was valid. (See *United Grand*, *supra*, 36 Cal.App.5th at p. 153.)

Third, we reject Sepehry-Fard's assertion that the trial court's reasoning shows it "used a decoy to avoid ruling on the merits of the motion." The only explanation in the clerk's minutes for the trial court's ruling relates to a different motion Sepehry-Fard noticed for the same date.[27] This does not suggest any attempt to mislead. On the record

---

[27] The other motion concerned transcripts from the 2023 mistrial. Sepehry-Fard later filed amended motions concerning the transcripts, noticed for a later date. The minute order from the first hearing reflects that a "Motion: Vacate" was heard and denied that day. But the stated rationale appears to relate to the mistrial transcripts—and the subsequent formal written order addresses only the mistrial transcripts. After the

28

before us, which does not include the oral proceedings, we will not speculate about the trial court's reasons for denying the motion. We know only the fact that the court denied the motion, because Sepehry-Fard has appealed from the denial.

Having failed to show the judgment was void, Sepehry-Fard was not entitled to relief under section 473, subdivision (d). However the trial court reached the same conclusion, we lack any basis to reverse.

## E.     *Transcripts from the 2023 Mistrial*

After judgment, Sepehry-Fard unsuccessfully sought a waiver of fees for preparation of reporter transcripts from the 2023 mistrial. (See Bus. & Prof. Code, §§ 8030.2 [providing for creation of Transcript Reimbursement Fund for use by low-income litigants], 8030.6, subd. (a)(4).) He then moved the trial court for an order to produce the mistrial transcripts at no cost. The trial court denied the motion because the case was adjudicated not at trial but in the post-mistrial summary judgment litigation. Without free transcripts from the 2023 mistrial, Sepehry-Fard now contends that the "court administrators" conspired to violate his rights under *Jameson*, *supra*, 5 Cal.5th 594 and Government Code section 68086, subdivision (b).

We do not see how the omission of the mistrial transcripts has any bearing on this appeal from the later summary judgment. Indeed, Sepehry-Fard did not file his motion for the free mistrial transcripts until after the judgment and after he filed his notices of appeal. Sepehry-Fard argued to the trial court that the transcripts will show "due process violations that ultimately caused [his] medical conditions." But any procedural defects in the mistrial are immaterial to his appeal from the judgment on U.S. Bank's post-mistrial motion for summary judgment. As the trial court observed in denying Sepehry-Fard's

---

second hearing date, the minute order provided that the motion concerning the mistrial transcripts "was previously brought and denied."

29

motion for the transcripts, the mistrial was not where the unlawful detainer was ultimately adjudicated.

*Jameson* supports no different conclusion. *Jameson* concerned a trial court's duty to supply a court reporter for trial when the plaintiff requested but could not afford to hire one and the defendant chose not to. (*Jameson*, *supra*, 5 Cal.5th at pp. 598–599, 623.) And nothing in the record suggests that Sepehry-Fard requested but was denied a court reporter at the hearing on U.S. Bank's summary judgment motion. But the *Jameson* court stopped short of enshrining an absolute right to transcripts regardless of context— its harmless error analysis contemplated that a plaintiff might be "unable to obtain funds for a reporter's transcript" even if a reporter had been present at the hearing. (*Id*. at pp. 624, 625; see also *id*. at p. 624 ["This court has not yet addressed the question under what circumstances an in forma pauperis civil litigant may be entitled to obtain a free reporter's transcript when such a transcript is essential to the resolution of the litigant's appeal on the merits"].)

We discern neither error nor prejudice in the trial court's denial of Sepehry-Fard's motion for production of the 2023 mistrial transcripts.

### F.     *Sepehry-Fard's Appellate Motion for an Evidentiary Hearing On Costs*

In a motion filed in this court on June 28, 2024, Sepehry-Fard asked us to hold an evidentiary hearing to explore whether U.S. Bank paid court reporter fees associated with the 2023 mistrial. The apparent purpose of such a hearing would be to develop evidence impeaching U.S. Bank's memorandum of costs, filed February 7, 2024. Sepehry-Fard cites no authority for our convening the requested hearing, when issues associated with U.S. Bank's claimed costs are to be adjudicated in the trial court in the first instance.[28] The June 28, 2024 motion is denied.

---

[28] The register of actions indicates that Sepehry-Fard filed objections to the memorandum of costs the same day U.S. Bank filed the memorandum. It is unclear from the appellate record what costs, if any, the trial court awarded.

## III.    DISPOSITION

The January 23, 2024 judgment and March 26, 2024 order denying Sepehry-Fard's motion to vacate the judgment are affirmed.  Appeal number H051922 is dismissed.

_____
LIE, J.

WE CONCUR:


_____
GROVER, Acting P. J.


_____
DANNER, J.


*U.S. Bank National Association v. Sepehry-Fard*
H051882, H051922 & H051965